Nathaniel JACKSON, a minor, by his Father and Next Friend, W. D. Jackson, et al., Appellants,

v.

O. C. RAWDON, As President of the Board of Trustees, Mansfield Independent School District, et al., Appellees.

No. 15927.

United States Court of Appeals Fifth Circuit.

June 28, 1956.

U. Simpson Tate, Dallas, Tex., L. Clifford Davis, Fort Worth, Tex., Robert L. Carter, Thurgood Marshall, New York City, for appellants.

J. A. Gooch, Fort Worth, Tex., for appellees.

Before HUTCHESON, Chief Judge, and RIVES and BROWN, Circuit Judges.

HUTCHESON, Chief Judge.

Brought October 7, 1955, against the defendants, Board of Trustees of the Mansfield Independent School District, the president and members of the board, and the superintendent of the district, by Negro children of school age, to redress the deprivation, under color of state law, of their rights secured by the Constitution of the United States, the suit sought a declaratory judgment and an injunction.

The claim was that, though plaintiffs, minors between the ages of six and twenty-one years, have met all lawful requirements for admission to the Mansfield High School, maintained by the Mansfield Independent School District, the defendants denied them admission thereto because, and only because, they were colored, and there being no Negro high school in the district, they were, pending recognition of their right to attend Mansfield High School, obliged to accept bus service to Fort Worth to attend the Negro high school there.

Defendants filed a motion to dismiss, in which, admitting that the Supreme Court of the United States, in Brown v. Board of Education, 347 U.S. 483, 74 S. Ct. 686, 98 L.Ed. 873, had more than a year earlier determined that state laws and state constitutions which prescribed segregation were unconstitutional, and that the Supreme Court of Texas, on Oct. 12, 1955, in McKinney v. Blankenship, 154 Tex. 632, 282 S.W.2d 691 had recognized that the decision in that case had had the specific effect of rendering unconstitutional the segregation provisions of the constitution and laws of Texas, and, asserting: that desegregation could not be accomplished over night; that the problem of desegregation of the public school system of the Mansfield District is under intensive study; that so far they have not had time to adjust to the transition; and that they are making every effort to make such adjustment and will make such adjustment as soon as time and circumstances will permit; insisted that the suit was premature and should be dismissed.

For answer, admitting some and denying other paragraphs of the complaint and realleging, as they had in their motion to dismiss, that the defendants are obeying the mandate of the Supreme Courts of the United States and of the State of Texas, in attempting to solve the problem in an equitable manner, defendant urged that the remedy sought by plaintiffs is premature and the suit should be dismissed.

Thereafter, the case came on for hearing and was fully heard upon evidence which, consisting in part of testimony as to the substitute arrangements the board had made for sending Negro children to Fort Worth by bus so that they would not have to be admitted to the Mansfield High School, fully established plaintiffs' claims by developing that there were no administrative difficulties which had to be overcome in order to admit the plaintiffs to the Mansfield High School but only, as clearly shown by the testimony of R. L. Huffman, the superintendent, a difficulty arising out of the local climate of opin-

ion,[1] requiring the board, in its opinion, to discriminate against plaintiffs by denying them access to the only high school in Mansfield, while permitting white children to attend it. Cf. Whitmore v. Stilwell, 5 Cir., 227 F.2d 187, 188.

In answer to questions as to when the matter of admission of colored students on a desegregated basis in the Mansfield District would likely come about, Huffman stated that the board and each member of it had had discussions with the citizenship of the town, and the board had passed a resolution that the schools would be kept segregated during the year 1955–56.

In answer to further inquiry as to what his contention now is, he stated: "The court ruled we had a reasonable length of time to meet the different requirements, and we would not have time on that short notice, from May 17, 1954 until May of 1955, or between May of 1955 to September 2, 1956, to carry out the mandate of the court".

Mr. Gibson, secretary, and a member of the school board, testified that he was on a committee to study segregation and that it was still in operation, and "We are going to try to desegregate as soon as we think it is practicable at all."

"Q. In other words, you are going to desegregate when the tension or the reaction of your community to desegregation will be neutralized?
A. As much as possible."

Asked: "Has your board made any decision at all as to what it is going to do about the year 1956–57?", the witness answered: "No" and that the board had no plan beyond the one already announced for the present session.

Mr. Wilshire, a school board member, testified that the board had reached no conclusion with respect to desegregation.

"Q. Have you run into any problems? A. We have.

"Q. What are your problems?
A. Dissatisfaction among the community.

"Q. When you say dissatisfaction among the community, what is the community dissatisfied about? A. Well, they are not satisfied with desegregation and are not ready to enter into it right at the present time, and we have reported that to the board.

"Q. What plan does your board have of conforming to the mandates of the two decisions? A. I believe if we were given sufficient time we could work the problem out but at the present time we have no plan."

The testimony ended, the district judge, declining to enter a declaratory judgment as prayed for in pars. (a) (b)

---

1. "Q. Is that your position? A. That is right.
"Q. Now what conditions would you have to bring about in order to carry out the court's mandate? A. That would be hard to answer in a concise statement due to the fact that we have been in the two fold school system so long in Texas *we just would not have time to enter into the many details that would have to be worked out in order to sell such a program in the local community.*
"Q. What were some of those details? A. Well it would be the breaking down of the old traditions that had been established. It would be getting two different types of people ready for something new which the board deems will take time.
"Q. It would be the breaking down of old traditions and getting the people to accept the change? A. That is right, getting both sides of a question into a position to accept.
"Q. So that was the barrier that you had, that was the thing that kept you from going ahead, is that correct? A. That is one of the main barriers.
"Q. All right, sir, did you have any others? A. Well not other than just the fact that we had details to work out in placing these students where they have not been with the whites and the colored and this could not be done we thought just over night."
His final answer was: "The school board if given sufficient time can and will work out the problem to the mutual satisfaction of all the people in the community and when conditions have been made such and justifiable, it will be done."

(c) and (d) of plaintiffs' prayer, declaring and establishing the constitutional rights of plaintiffs, not to be discriminated against, and treating the suit as only for an injunction, held:

"The School Board has shown that it is making a good faith effort toward integration and should have a reasonable length of time to solve its problems and end segregation in the Mansfield Second School District. At this time this suit is precipitate and without equitable justification."

So finding and holding, he ordered the action dismissed without prejudice and plaintiffs have appealed.

■ Here, citing cases [2] in complete support, appellants insist that the board has not brought itself within the protection of the "prompt and reasonable start" requirements of the Supreme Court. Invoking the settled doctrines: (1) that in a suit of this kind plaintiffs have an absolute right to have their constitutional rights declared; and (2) that the defendants may not, upon consideration of the merely personal viewpoints of the trustees and of the citizens generally, that the community is not psychologically ready for the change, continue the practice of segregation in the high school; they insist that the judgment was wrong, and must be reversed, while appellees vigorously defend the judgment as within the sound discretion of the district judge and right.

■ We think it clear that, upon the plainest principles governing cases of this kind, the decision appealed from was wrong in refusing to declare the constitutional rights of plaintiffs to have the school board, acting promptly, and completely uninfluenced by private and public opinion as to the desirability of desegregation in the community, proceed with deliberate speed consistent with administration to abolish segregation in

Mansfield's only high school and to put into effect desegregation there.

Had the court made such a declaration and retained the cause for further orders necessary to implement it, deferment to a later time of action on the prayer for injunctive relied, if necessary, may well have been within his discretion. The issuance of such a declaration of rights with retention of the case would have given the court the means of effectually dispelling the misapprehension of the school authorities as to the nature of their new and profound obligations and compelling their prompt performance of them. This misapprehension appears from the undisputed evidence of superintendent and board members which plainly shows that the board had not given serious consideration to its paramount duty not to delay but to proceed with integration in respect to the sole high school in Mansfield, but, quite to the contrary, had taken definite action to continue segregation there throughout the coming school year. Indeed it had declined to fix or even give serious consideration to the time when it would cease, and the only reason it gave for not instituting it at once in the case of the plaintiffs and the Mansfield High School was its concession to public opinion.

The judgment is, therefore, reversed and the cause is remanded with instructions for further and not inconsistent proceedings, including instructions to the district court that it declare: that plaintiffs have the right to admission to, and to attend, the Mansfield High School on the same basis as members of the white race; that the refusal of the defendants to admit plaintiffs thereto on account of their race or color is unlawful; that it order the defendants forever restrained from refusing admission thereto to any of the plaintiffs shown to be qualified in all respects for admission; and that it retain jurisdiction of the cause for fur-

2. Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873; Id., 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083; Clemons v. Board of Education, 6 Cir., 228 F.2d 853; McKinney v. Blankenship, 154 Tex. 632, 282 S.W.2d 691; Willis v. Walker, D.C., 136 F.Supp. 181; to which may be added Whitmore v. Stilwell, 5 Cir., 227 F.2d 187.

ther orders at the foot of the decree to promptly, fully, and effectively carry out this mandate and the orders of the district court entered pursuant thereto.

Reversed and remanded with directions.