251 F.2d 780
 Carl L. BALDWIN and Alexinia Baldwin, Appellants,
v.
J. W. MORGAN, R. E. Lindbergh, J. T. Waggoner, Individually
and as Members of the Board of Commissioners of
the City of Birmingham, et al., Appellees.
 No. 16717.
 United States Court of Appeals Fifth Circuit.
 Jan. 14, 1958.
 
 Oscar W. Adams, Jr., Demetrius C. Newton, Birmingham, Ala., for appellants.
 Jos. F. Johnston, James H. Willis, City Atty., Birmingham, Ala., Gordon Madison, Asst. Atty. Gen. of Alabama, J. M. Breckenridge, Thad Holt, Jr., Cabaniss & Johnston, Birmingham, Ala., John Patterson, Atty. Gen. of Alabama, William F. Black, Montgomery, Ala., for appellees.
 Before RIVES, JONES and BROWN, Circuit Judges.
 JOHN R. BROWN, Circuit Judge.
 
 
 1
 The question here is whether the complaint for injunction and declaratory relief, filed as a class action by Negroes complaining of discriminatory segregation in the Birmingham Railroad Terminal, stated a Civil Rights case against the three groups of defendants, the Alabama Public Service Commissioners, the City of Birmingham Commissioners, and Birmingham Terminal Company. The District Court held that it did not and dismissed[1] the case.
 
 
 2
 Leaving to later discussion the more troublesome point of the sufficiency of the complaint against the Terminal because it has no direct status as an agency of the state, we think that, under the applicable principles of federal pleadings, it sufficiently charged a violation of one or more Civil Rights. The complaint expressly referred to the jurisdictional statute, 28 U.S.C.A. 1343(3), to the Civil Rights Statute, 42 U.S.C.A. 1981, 1983, (under its former codification as 8 U.S.C.A. 41, 43), the Fourteenth Amendment and Art. 1, Sec. 8, of the Constitution, presumably to comprehend Clause 3 granting to Congress the power 'To regulate Commerce with foreign Nations, and among the several States * * *.'
 
 
 3
 Reading the complaint as a whole, as we must, the principal question[2] framed for declaratory relief, 28 U.S.C.A. 2201, 2202, became a part of later allegations and this spelled out that the grievance the plaintiffs had was that the defendants, under color of practice, custom, usage or state law, were denying Negroes equal privileges and immunities by depriving them of their right to use the 'Interstate and White Waiting Room' or any other waiting room, because of their race and color.
 
 
 4
 This was followed by specific allegations as to each of the three defendant groups. After describing the status of the City Commissioners (one of whom was Police Commissioner), it charged in positive terms that the Commissioners '* * * are pursuing a * * * custom, statute or usage which denies the plaintiffs and all other Negroes similarly situated their right to use the waiting room at the * * * Terminal * * * designated, 'Interstate and White Waiting Room', and under color of Section 186, Tit. 48, 1940 Code of Alabama; and pursuant to their orders, plaintiffs and other Negroes who fail to observe said policy, custom, statute or usage are subject to arrest and confinement in jail.' It elaborates on this by then asserting that the Commissioners 'seek and have agreed among themselves to require obedience by the plaintiffs and others similarly situated, of a policy, custom, statute or usage, which requires segregation of the plaintiffs, or other Negro citizens similarly situated in the Terminal * * *.'
 
 
 5
 Similarly, after describing the function and status of the Public Service Commission and the Commissioners, it charged in equally direct terms that such Commissioners, charged by law with the responsibility for administration and enforcement of Title 48, Section 186, of the 1940 Code of Alabama, a copy of which was annexed[3] to the complaint, '* * * acting as State Officers and under the color of said provisions of said Code of Alabama, have issued or caused to be issued, orders directing and requiring the segregation of Negroes in railroad waiting rooms.'
 
 
 6
 The complaint next sets forth the status of the Terminal Company. Then, in a similar way, both affirmatively and negatively, it charges discriminatory compulsory segregation by the Terminal in the waiting rooms. It asserts that the Terminal '* * * has pursued and is pursuing a policy, custom, or usage of denying * * * plaintiffs and other Negroes similarly situated, the use of the waiting room at the * * * Terminal * * * designated 'Interstate and White Passengers Waiting Room', and has pursued a policy of providing * * * plaintiffs and other Negroes similarly situated of waiting rooms on a segregated basis, all of which actions have been under color of and purported compliance with, Section 186, Tit. 48, 1940 Code of Alabama, and the orders of the Public Service Commission pursuant thereto, all * * * in violation of the rights guaranteed * * * Negroes under the Constitution * * *'.
 
 
 7
 The District Judge, stating that 'No * * * federal court has a right to adjudicate a difference or dispute of a hypothetical or abstract character,' 149 F.Supp. 224, 225, apparently thought that these allegations presented only those of a proscribed hypothetical or abstract moot case. But under the rules so often repeated[4] by us, and even more recently restated[5] in Conley v. Gibson, 78 S.Ct. 99, 102, we see nothing hypothetical or academic about this claim as a pleading. In straightforward language which the plaintiffs seek to prove by evidence, they charge that pursuant to orders of the Public Service Commission acting presumably under Section 186, note 3, supra, the Public Service Commissions, the City Commissioners, and the Terminal are now following the custom, practice and usage of enforcing compulsory segregation by race in the Terminal waiting rooms.
 
 
 8
 The complaint is not, as the defendants urged and the Court apparently thought, subject to dismissal for formal deficiencies because, for example, it did not set forth the terms of the Commission's order or more fully describe the custom or usage. In the Federal civil procedure if these are general, there are ample discovery weapons to fill them out or in.
 
 
 9
 As a matter of fact, one could not more categorically charge that an order has been issued than to say just that. That is no conclusion, but an everyday statement of fact. So, too, is the charge that there is a custom and usage to compel segregation. If that is the custom and usage, how better could it be stated?[6] It does not become an allegation of a mere conclusion simply because, when it comes to proof, there may be problems in marshaling evidence to support the claim of custom or usage. But it is not the less an adequate statement of the 'fact' because the supporting evidence is not detailed or somehow described.
 
 
 10
 Once we are over the hurdle of the formal sufficiency of the pleading as a pleading, there can be no question that as to the Public Service Commissioners and City Commissioners, it states a justiciable claim within the Court's jurisdiction under The Civil Rights Acts. There is no intimation that these two groups of named individuals are doing what is complained of as individuals. On the contrary, it is clear that the opposite is charged-- that these acts are being done by them as public servants. They are not therefore the '* * * acts of officers in the ambit of their personal pursuits (which) are plainly excluded.' Screws v. United States, 325 U.S. 91, 111, 65 S.Ct. 1031, 1040, 89 L.Ed. 1495, 1508.
 
 
 11
 The Public Service Commissioners, as state officers, were obviously agents of the State of Alabama. Browder v. Gayle, D.C.A.la., 142 F.Supp. 707, affirmed 352 U.S. 903, 77 S.Ct. 145, 1 L.Ed.2d 114. So, too, were the City Commissioners since, in Alabama, a municipal corporation '* * * is essentially a public agency, a local unit of government, invested with a portion of the sovereign power of the State, for the benefit of its inhabitants.' Cooper v. Town of Valley Head, 212 Ala. 125, 101 So. 874, 875. As to these, therefore, there was the requisite state action under the Fourteenth Amendment or 42 U.S.C.A. 1983.
 
 
 12
 Nor can there be any serious question on the sufficiency of the allegations that these state acts were being done by each 'under color of * * * statute' or 'under color of any * * * custom, or usage, of a state * * *,'42 U.S.C.A. 1983. The difficulty of the District Judge, on this point stems, we think, from his mistaken notion, several ways implied, that an action of a person cannot be state action (under color of law) if it is contrary to or in excess of authority granted under state law, or if the state law were invalid. On this approach, he then reasoned that since only the offending railroad can be criminally punished, Title 48, Alabama Code 1940, Section 428, for failure to obey the Section 186 Order of the Public Service, and the order could under no circumstance apply to interstate passengers and terminal facilities in view of the contrary ruling in N.A.A.C.P v. St. Louis-San Francisco Ry. Co., 297 I.C.C. 335, and no Birmingham ordinance purported to forbid unsegregated waiting rooms, these officials could not have been acting under color of law.
 
 
 13
 But that is not the test. The Public Service Commission clearly had the general authority to issue orders. And the City Commissioners and policemen subordinate to them had general authority to make arrests.[7] If these powers are being misused, either because beyond the power invested in them by the local law or because the use of that power deprives one of a constitutionally protected right, it is still under color of state law. For, 'Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law.' United States v. Classic, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368, 1383.
 
 
 14
 If Public Service Commissioners issued orders as Commissioners to compel segregation, if City Commissioners or policemen acting under them, as public officials, undertake compulsorily to enforce segregation, such actions are most assuredly because of their position as public officials and by virtue of an assertion implied at least, of a claim of authority to take such action. This makes such acts under 'color' of law. For 'It is clear that under 'color' of law means under 'pretense' of law. * * * Acts of officers who undertake to perform their official duties are included whether they hew to the line of their authority or overstep it. If, as suggested, the statute was designed to embrace only action which the State in fact authorized, the words 'under color of any law' were hardly apt words to express the idea.' Screws v. United States, 325 U.S. 91, 111, 65 S.Ct. 1031, 1040, 89 L.Ed. 1495, 1508.
 
 
 15
 We put in the same category the District Judge's decisive overemphasis of the arrest of the two plaintiffs, husband and wife. As we view it, the allegations in the complaint that pursuant to this described policy, custom, usage and practice, the two named plaintiffs were arrested on December 17, 1956, while both were waiting in the 'Interstate and White Passenger' waiting room after purchasing two interstate round trip tickets to and from Birmingham and Milwaukee, Wisconsin, is merely tangible specific evidence of the application of the custom, practice and usage complained of. But it was this arrest, whether false or improvident, which somehow was turned into the main case below. Where the allegation, as it is here, is positive that compulsory segregation by reason of race is being enforced by the specified practice, the action is unconstitutional and redress should be afforded the complainants, Gayle v. Browder, supra, without the necessity of precipitating an incident, such as a claim of right and resistance of arrest as a 'test' case. Gibson v. Board of Public Instruction of Dade County, 5 Cir.,246 F.2d 913.
 
 
 16
 Assuming that somehow consideration of these subsequent events not disclosed by the complaint was properly before the Court on a motion to dismiss, see note 1, supra, this city criminal case, or its dismissal, was not the Civil Rights case before the Court below. When the criminal proceeding was closed, it did not automatically take with it the charge made in this cause that state agencies, pretending to act for the state and exerting the power of their respective offices were, under the threat of arrest or other means, depriving Negroes of the right to be free of discrimination in railway public waiting rooms on account of race or color.
 
 
 17
 Of course the fact that the law or the Constitution clearly forbids compulsory segregation in the facilities of interstate commerce, N.A.A.C.P. v. St. Louis-San Francisco Ry. Co., 297 I.C.C. 335; Morgan v. Commonwealth of Virginia, 328 U.S. 373, 66 S.Ct. 1050, 90 L.Ed. 1317; Henderson v. United States, 339 U.S. 816, 70 S.Ct. 843, 94 L.Ed. 1302; Mitchell v. United States, 313 U.S. 80, 61 S.Ct. 873, 85 L.Ed. 1201, as it equally does as to that imposed by state action in intrastate commerce, Browder v. Gayle,supra, does not, as the Court seemed to think, render the cause nonjusticiable. For the complaint is that the defendants under color of Alabama custom, usage and law are in fact ignoring or defying the law by denying equal facilities because of race or color. The test thus impliedly asserted would defeat all litigation at the outset and would certainly render moot every contemporary civil rights action. Many, if not most, civil rights actions and those to redress denial of equal privileges and immunities are to obtain a declaration, and perhaps coercive relief, of a constitutional prerogative which has been clearly established, but which is being ignored or denied by the defendant. Jackson v. Rawdon, 5 Cir., 235 F.2d 93; Borders v. Rippy, 5 Cir., 247 F.2d 268.
 
 
 18
 While the problem is more complex as to the Terminal Company, we think that as to it, too, a case was stated within the Court's jurisdiction. In our disposition, we do not reach the question of whether, in seeking equitable or declaratory redress for deprivation of rights normally incapable of money valuation, Hague v. Committee for Industrial Organization, 307 U.S. 496, 529, 59 S.Ct. 954, 83 L.Ed. 1423, 1444, the bare allegation of more than $3,000 as the amount in controversy affords jurisdiction under 28 U.S.C.A. 1331.
 
 
 19
 We think that the complaint, read as a whole, charges, first, that the Public Service Commission has issued orders requiring segregated waiting rooms which the Terminal Company is compelled under Alabama law to enforce. Next, it asserts that the '* * * Terminal * * * is pursuing a policy, custom or usage of danying * * * Negroes * * * the use of the * * * 'white * * * waiting room' and has pursued a policy of providing * * * Negroes * * * waiting rooms on a segregated basis. * * *.' And third, and decisive, it alleges that such '* * * actions have been under color of and purported compliance with, section 186 * * * and the orders of the Public Service Commission pursuant thereto, * * *.'
 
 
 20
 Construing a complaint in the light of the Federal Rules, notes 4, 5, supra, this is a pleading claim that the two are acting together, and that the Terminal Company, if not doing more, is at least aiding and abetting in the state action condemned by the Fourteenth Amendment and the Civil Rights Act.
 
 
 21
 Here again, confusion has undoubtedly entered the picture by the apparent preoccupation with the specific event of the arrest of the two-named plaintiffs on December 17, 1956. If the case were one for false arrest or imprisonment, it might well fail for want of any allegation connecting the Terminal Company with that incident. But that is not the case. The case is that the Service Commission and the Terminal Company, under color of Alabama law, custom or usage, have established compulsory segregation and that it is carried out, in part at least, by subjecting those '* * * who fail to observe said * * * custom, statute or usage * * * to arrest and confinement in jail.' The specific arrest may perhaps be evidence of the application of that policy, custom or usage, but it is not the cause for which redress is sought.
 
 
 22
 State action is indeed required under the Fourteenth Amendment and42 U.S.C.A. 1983. But those who directly assist the admitted state agency in carrying out the unlawful action become a part of it and subject to the sanction of Section 1983. The Third Circuit in two cases[8] has held a private non-state party subject both to Civil Rights jurisdiction, 28 U.S.C.A. 1343(3), as well as liability under 42 U.S.C.A. 1983. Jurisdiction for such joint action was recognized by the 8th Circuit, Watkins v. Oaklawn Jockey Club, 183 F.2d 440, which affirmed a denial of recovery on the merits after trial on the ground that the action of the alleged state officers was, as Screws puts it: '* * * In the ambit of their personal pursuits * * *.' And the Fourth Circuit, Flemming v. South Carolina Elec. & Gas Co., 224 F.2d 752, 753, considers that a private person may subject his employer to civil rights liability.[9]
 
 
 23
 This is borne out as well by numerous criminal cases in which a private citizen is convicted for conspiracy under 18 U.S.C.A. 371, or its predecessors, to violate the Criminal Code[10] Civil Rights provision, 18 U.S.C.A. 242, comparable to the civil sanction under 42 U.S.C.A. 1983. This is especially so since 18 U.S.C.A. 242 and 42 U.S.C.A. 1983 are in pari materia.[11]
 
 
 24
 In Brown v. United States, 6 Cir., 204 F.2d 247, a loan shark was convicted for conspiracy to violate 18 U.S.C.A. 242 where he used a constable pretending to act as an officer for the arrest of debtors to extort immediate and usurious payments. This case cited and approved ours in Koehler v. United States, 5 Cir., 189 F.2d 711, in which a private citizen assisted a constable in a brutal assault and unlawful imprisonment incommunicado of a person accused of running down one of the constable's hound dogs. See also, United States v. Lynch, D.C.Ga., 94 F.Supp. 1011, 1014, affirmed 5 Cir., 189 F.2d 476. A similar result was reached in Culp v. United States, 8 Cir., 131 F.2d 93, where a sheriff, his deputies, jailers and two private lawyers were convicted for having set up a scheme by which they threw victims in jail, held kangaroo courts, imposed informal fines and finally let the victims out after they had hired the two lawyers.
 
 
 25
 If, under the constitutional limitations inherent in these Civil Rights Acts directed at state action, the act of a private citizen can be made into a Federal crime by combining and working with a public official, we see no fundamental constitutional obstacle to affording as wide an application to the civil sanctions. And with language almost identical, we could hardly divine that, from a legislative point of view, Congress turned the usual tables and intended the civil to be more stringent than the criminal.
 
 
 26
 There is yet another reason. The Complaint charges categorically that all of these actions of the Terminal Company '* * * have been under color of * * * section 186, * * *, and the orders of the Public Service Commission pursuant thereto * * *.' The statute, note 3, supra, is plain in stating that 'Every railroad * * * on the order of the public service commission, shall provide, * * * and maintain adequate depots * * *. And * * * for the * * * accommodations of its passengers, must have, when required by the public service commission, * * * sufficient * * * waiting rooms, to be determined by the commission, * * * having regard to sex and race, * * *.'
 
 
 27
 We think that this makes it state action because the state law leaves to another, a railroad company, the obligation of enforcing its state policy. When given police powers, individual citizens become state agents without question, Browder v. Gayle, supra; Flemming v. South Carolina Electric & Gas Co., 4 Cir., 224 F.2d 752. And so they have when, without vesting policing functions the private person or party '* * * operated as representative of the State in the discharge of the State's authority * * *,' since a private person or party '* * * takes its character as a state agency from the duties imposed upon it by state statutes; the duties do not become matters of private law because they are performed by * * *' a private person, Smith v. Allwright, 321 U.S. 649, 658, 663, 64 S.Ct. 757, 762, 88 L.Ed. 987, 994, 997.
 
 
 28
 If, as alleged, the Public Service Commission has ordered[12] segregation of waiting rooms, it is executing what it conceives to be the state's public policy,[13] and since its order cannot be effectuated unless the Terminal Company as a regulated public utility actively does something to carry it out, the situation is unavoidably one in which the State has committed decisive action to a private party.
 
 
 29
 For these reasons we think that the complaint, construed as attacking the unconstitutionality of enforced segregation both in interstate as well as intrastate commerce states a claim against the Terminal. To the extent that it asserts, as it most certainly does, a claim as to interstate commerce, we think there is an additional reason. For then the facts alleged bring into play the operation of an additional section of the Civil Rights Statutes, 42 U.S.C.A. 1985(3), which, by its terms,[14] applies to private persons who, in concert with others, deprive a citizen of certain rights and privileges judicially confined to those inhering in Federal citizenship. Lewis v. Brautigam, 5 Cir., 227 F.2d 124, 128; Collins v. Hardyman, 341 U.S. 651, 71 S.Ct. 937, 95 L.Ed. 1253.
 
 
 30
 We are here not concerned with the constitutional doubts on the reaches of this statute. First, the rights infringed here are of equal protection, equal immunities and equal privileges clearly within this Act, Collins v. Hardyman, supra; Lewis v. Brautigam, supra. Next, they come within the constitutional power. For, as was said about its counterpart in the Criminal Code, 18 U.S.C.A. 241, '* * * the rights which 6 (18 U.S.C.A. 241) protects are those which Congress can beyond doubt constitutionally secure against interference by private individuals. Decisions of this Court have established that this category includes rights which arise from the relationship of the individual and the Federal Government. * * * On the other hand, we have consistently held that the category of rights which Congress may constitutionally protect from interference by private persons excludes those rights which the Constitution merely guarantees from interference by a State.' United States v. Williams, 341 U.S. 70, 77, 71 S.Ct. 581, 584, 95 L.Ed. 758, 764.
 
 
 31
 As we are concerned with interstate transportation by railroad, the right to be free from compulsory discrimination on account of race or color is most assuredly one which arises from the relationship of the individual plaintiffs (and their class) and the Federal Government. As in the case of Homestead Acts, 43 U.S.C.A. 161, 162, 164, United States v. Waddell, 112 U.S. 76, 5 S.Ct. 35, 28 L.Ed. 673, and a Federal Informers Act, 18 U.S.C.A. 241, In re Quarles, 158 U.S. 532, 15 S.Ct. 959, 39 L.Ed. 1080, this right, if not pertaining to United States citizenship is one "wholly dependent upon the act of Congress' (so that) obstructing its exercise came 'within the purview of the statute and of the constitutional power of Congress to make such statute."[15] Three times, under the Interstate Commerce Act, 49 U.S.C.A. 3(1), compulsory discrimination on account of race or color has been proscribed. Mitchell v. United States, 313 U.S. 80, 61 S.Ct. 873, 85 L.Ed. 1201; Henderson v. United States, 339 U.S. 816, 70 S.Ct. 843, 94 L.Ed. 1302; NAACP v. St. Louis-San Francisco Ry. Co., 297 I.C.C. 335. And once, Morgan v. Commonwealth of Virginia, 328 U.S. 373, 66 S.Ct. 1050, 90 L.Ed. 1317, resting upon Article 1, Section 8, of the Constitution (which the plaintiffs here expressly invoke), compulsory segregation on account of race in interstate motor transportation was held to be an unconstitutional burden upon that commerce itself.
 
 
 32
 The plaintiffs are here then seeking protection of the rights secured to them both by the Federal Constitution and the acts of Congress to be free in interstate commerce from the denial of equal rights and privileges from concerted action of two or more persons (the Terminal and the Public Service Commissioners or the City Commissioners, or city policemen acting under them).
 
 
 33
 This is within the reach of the statute and the statute as to such right is within the reach of the Constitution. If these facts bring into play this statute, the plaintiffs are not to be deprived of their right of attempting tp prove the deprivation simply because, while 42 U.S.C.A. 1981 and 1983 were expressly cited in the complaint, Section 1985(3) was not. As in Lewis v. Brautigam, 5 Cir., 227 F.2d 124, 128, if '* * * the gist of the action may be treated as one for the deprivation of such rights * * *', the Court should apply the appropriate Civil Rights Statutes, whether correctly described or not.
 
 
 34
 It follows that the cause as to each and all of the defendants, the appellees here, must be reversed and remanded for further and not inconsistent proceedings.
 
 
 35
 Reversed and remanded.
 
 
 36
 JONES, Circuit Judge (dissenting in part).
 
 
 37
 I can go along with the majority in holding that the action should not have been dismissed as to the Board ofCommissioners of the City of Birmingham and the Members of the Alabama Public Service Commission. I part with them when they find a claim stated against Birmingham Terminal Company over which a Federal Court has jurisdiction.
 
 
 38
 Obviously there is no jurisdiction under 28 U.S.C.A. 1331. If jurisdiction exists it is under 28 U.S.C.A. 1343(1) or 1343(3) which provide:
 
 
 39
 'The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
 
 
 40
 '(1) To recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section 47 of Title 8 (42 U.S.C.A. 1985);
 
 
 41
 '(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.'
 
 
 42
 As to the Terminal Company the Complaint alleges it operates a railway terminal and that it
 
 
 43
 'has pursued and is pursuing a policy, custom or usage of denying your plaintiffs and other Negroes similarly situated, the use of the waiting room * * * designated 'Interstate and White Passengers Waiting Room', and has pursued a policy of providing your plaintiffs and other Negroes similarly situated of waiting rooms on a segregated basis, all of which actions have been under color of and purported compliance with, section 186, Tit. 48, 1940 Code of Alabama, and the orders of the Public Service Commission pursuant thereto, all of which is in violation * * * of their right to use the facilities of the Birmingham Terminal Station on an unsegregated basis.'
 
 
 44
 The foregoing may state a justiciable claim but not all such are in the Federal orbit. The majority say:
 
 
 45
 'If the case were one for false arrest or imprisonment, it might well fail for want of any allegation connecting the Terminal Company with that incident. But that is not the case. The case is that the Service Commission and the Terminal Company, under color of Alabama law, custom or usage, have established compulsory segregation and that it is carried out, in part at least, by subjecting those '* * * who fail to observe said * * * custom, statute or usage * * * to arrest and confinement in jail".
 
 
 46
 The part of the above language relating to arrest and jail which is under quotes in the majority opinion was lifted from a paragraph dealing with the Birmingham City Commissioners. The complaint alleged that failure to observe the policy, custom, statute or usage of the City Commission, not those of the Terminal Company, would result in jail and arrest.
 
 
 47
 So far as concerns interstate passengers, the Alabama statute and any orders of the Alabama Public Service Commission to the extent they may require segregation in waiting rooms, were superseded by the Interstate Commerce Commission ruling. In the complaint can be found statements that the Alabama Commission had issued orders requiring segregation in waiting rooms which the City Commission would enforce by arrest and confinement. No such allegation is made as to the Terminal Company. It is to be noted that there is no charge of any concert of plan or action of the Terminal Company with the other appellees. The Terminal Company had no express powers to enforce segregation. I find nothing said to indicate that any were assumed. We do not have a case here where state officers exceed their authority or where a conspiracy existed. there is no basis in this case for the aider and abettor doctrine. The majority hold, and I think of necessity must hold to sustain jurisdiction, that the Alabama statute, which has been superseded as to interstate passengers, requires the Terminal Company to enforce segregation in waiting rooms and has clothed it with police powers as an arm of the State. The majority say that the now invalid order of the Alabama Public Service Commission cannot be enforced unless the Terminal Company does something to carry it out. The record shows the appellants were arrested by city police and does not show that the Terminal Company had anything to do with it.
 
 
 48
 There is no allegation that the Terminal Company made any agreement or had any understanding with any of the other appellees regarding the policy attributed to it. There is no charge that it committed any overt act. There is no averment that it was a party to any concerted plan. Where there is no agreement or plan, and where there is no act done to further the 'policy', I can see no averment as to any conspiracy under 42 U.S.C.A. 1985. Under 28 U.S.C.A. 1343(1) the jurisdiction is limited to actions to recover damages. Here there are no damages sought and no allegations of damages made. The complaint seeks declaratory and injunctive relief and such other relief as may be equitable and just. The appellants did not, as I read their complaint, seek to invoke jurisdiction under 28 U.S.C.A. 1343(1), and do not before us, by brief or argument, assert such jurisdiction. I can see no basis for any such claim as to the Terminal Company.
 
 
 49
 Nor can I find any basis for jurisdiction under 28 U.S.C.A. 1343(3). I am unable, with my eyes, to detect the color of state law, statute, ordinance, regulation, custom or usage under which the Terminal Company has deprived the appellants of any of the rights enumerated in the jurisdictional grant.
 
 
 50
 In the majority opinion it is said, 'Three times, under the Interstate Commerce Act, 49 U.S.C.A. 3(1), compulsory discrimination on account of color or race has been proscribed.' Three cases are cited. Mitchell v. United States, 313 U.S. 80, 61 S.Ct. 873, 85 L.Ed. 1201, and Henderson v. United States, 339 U.S. 816, 70 S.Ct. 843, 94 L.Ed. 1302, are cases where appeals were taken from three-judge court decisions ruling on the validity of Interstate Commerce Commission orders. The third case, NAACP v. St. Louis-San Francisco Ry. Co., 297 I.C.C. 335, is, as the citation shows, an Interstate Commerce Commission decision. The majority opinion continues, 'And once, Morgan v. Commonwealth of Virginia, 328 U.S. 373, 66 S.Ct. 1050, 90 L.Ed. 1317, resting upon Article I, Section 8, of the Constitution (which the plaintiffs here expressly invoke), compulsory segregation on account of race in interstate motor transportation was held to be an unconstitutional burden upon that commerce itself.' This was an appeal from a decision of the Supreme Court of Appeals of Virginia.
 
 
 51
 We are not here concerned with the jurisdiction of the Interstate Commerce Commission nor with the jurisdiction of a Three-judge District Court to review orders and decisions of the Commission. We are not confronted with any question as to the jurisdiction of state courts. We do have a question as to the original jurisdiction of United States district courts, a question which I think the majority have wrongly decided.
 
 
 52
 The question should not be resolved by any measure of the complaint as to its sufficiency as a pleading. I am not troubled as to whether a claim is stated with adequate factual allegation. We are here applying jurisdictional tests and in Federal courts the party invoking the jurisdiction must make that jurisdiction appear by clear and positive averments. This I do not think the appellants have done.
 
 
 53
 From so much of the majority opinion as sustains jurisdiction of the Terminal Company, I dissent.
 
 
 
 [1]
 The Court, in its opinion, reported 149 F.Supp. 224, 226, did not distinguish between the three classes of defendants and presumably dismissed the case because no justiciable controversy was presented for the reason that he thought the case really concerned only the incident of the arrest and the subsequent nolle prosequi of the two named plaintiffs. How this information concerning the nolle prosequi dismissal of the city criminal charges was pertinent to a motion testing only pleadings is not clear, but in any case the Judge stated:
 'The long and the short of the matter is that a mistake apparently was made in arresting these plaintiffs. Charges pending against them have been dismissed. No good purpose would be served by prolonging this baseless litigation.'
 
 
 [2]
 Complaint II(a): 'Whether or not the actions of the defendants in enforcing, executing or pursuing against plaintiffs, or any other Negro similarly situated, the policy, practice, custom or usage which deprives plaintiffs and other persons similarly situated of their right to use the waiting room at the Terminal Station owned and/or operated by the defendant, Birmingham Terminal Company, A Corporation, said waiting room being designated, 'Interstate and White Waiting Room', or any other waiting room, deprives plaintiffs and all other Negroes similarly situated, because of their race or color, of a right and privilege afforded all white persons * * * of their privileges and immunities as citizens of the United States, * * * without the equal protection of the laws as secured by the Fourteenth Amendment * * *, section 1, and the rights secured by Tit. 8, United States Code, section 41 and 43, and Article 1, section 8 of the Constitution of the United States, and are for these reasons unconstitutional and void.'
 Par. IV was equally plain.
 
 
 [3]
 Title 48, Section 186, 1940 Code of Alabama: 'Every railroad company in this state, on the order of the public service commission, shall provide, construct and maintain adequate depots and depot buildings for the accomodation of passengers, * * *. And said railroad * * * must have, when required by the public service commission, at each of the passenger stations * * * sufficient sitting or waiting rooms, to be determined by the commission, for passengers waiting for trains, having regard to sex and race * * *.'
 
 
 [4]
 A motion to dismiss 'should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim * * *,' Des Isles v. Evans, 5 cir., 200 F.2d 614, 615; Millet v. Godchaux Sugars, Inc., 5 Cir., 241 F.2d 264, at page 265 and see our cases collated in note 1
 
 
 [5]
 'In appraising the sufficiency of the complaint, we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief * * *
 'The respondents also argue that the complaint failed to set forth specific facts to support its general allegations of discrimination and that its dismissal is therefore proper. The decisive answer to this is that the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. The illustrative forms appended to the Rules plainly demonstrate this. Such simplified 'notice pleading' is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues. * * * The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits. * * *.'
 
 
 [6]
 At least the Terminal Company considers such language sufficient to convey a meaning to this Court for in its brief it states: 'The station contains separate waiting rooms for white and colored passengers, in accordance with the long-accepted custom of this state and region. * * *' And speaking of Section 186, note 3, supra, this brief states: 'It has been on the books unchanged since 1883, and it does no more than recognize the basic ordering of our society with respect to separation of the races as a matter of fundamental and accepted custom.' Of course, the Terminal is here speaking of a voluntary, not a compulsory, custom
 
 
 [7]
 The Appendix to the plaintiffs' brief sets forth the following as the Disorderly Conduct provision of the Birmingham City Code;
 'Any person who disturbs the peace of others by violence or offensive conduct, or by loud or unsual noises, or by profane or obscene or offensive language, or any person who shall commit any act or diversion causing or attempting to cause breach of the peace, or any person who shall be guilty of lewd, immoral, or indecent conduct, or any person who shall use any obscene or filthy language in a public place, or any person who shall commit any act or diversion tending to or calculated to debauch the morals of any person, shall be deemed guilty of disorderly conduct.' The plaintiffs suggest that, as in Valle v. Stengel, 3 Cir., 176 F.2d 697, 701, if the police officers making or threatening to make arrests to effectuate the custom and usage of the Public Service and City Commissioners to compel segregation by threat of arrest must be shown to be acting pursuant to some specific ordinance, this Birmingham Code provision is a sufficient source.
 
 
 [8]
 Valle v. Stengel, 3 Cir., 176 F.2d 697, 702:
 'The fact that Stengel, a law-enforcement officer, was acting in definance of the law of New Jersey as embodied in R.S. 10:1-1 et seq., N.J.S.A., will not serve as a defense and, since the complaint alleges in effect that he aided and abetted the corporate defendant and the managing defendants, his actions may be attributed to them and treated as their own. Cf. Hodges v. United States, 203 U.S. 1, 27 S.Ct. 6, 51 L.Ed. 65.'
 Picking v. Pennsylvania R. Co., 3 Cir., 151 F.2d 240, 249:
 '* * * if, as the plaintiffs assert, this defendant (the Railroad) 'materially and physically participated in' all the alleged unlawful acts of September 15, 1941 it may have joined in, or as the plaintiffs put it, 'adopted,' the conspiracy as its own. The complaint does not explain how the corporate defendant intra vires could have done so. * * * The defendant corporation * * * (has not) moved for a more definite statement of the plaintiffs' claim * * *. In the absence of (motion for bill of particulars) by the Railroad Company we may not conclude that the plaintiffs have not stated a valid cause of action under the Civil Rights Act against it.'
 
 
 [9]
 'It is argued that, since the driver is made a police officer of the state by section 58-1494 of the South Carolina Code, his action is not attributable to the defendant; but we think it clear that he was acting for the defendant in enforcing a statute which defendant itself was required by law to enforce. See Code 58-1491. He was thus not only acting for defendant, but also acting under color of state law.'
 
 
 [10]
 'Whoever, under color of any law, statute, ordinance, regulation or custom, willfully subjects any inhabitant of any State, * * * to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, * * * shall be fined not more than $1,000 or imprisoned not more than one year, or both.' 18 U.S.C.A. 242
 
 
 [11]
 Picking v. Pennsylvania R. Co., 3 Cir., 151 F.2d 240, 248, where, analyzing the legislative transmutations of these two sections, the Court stated:
 'The operative language of R.S. 1979 (42 U.S.C.A. 1983), insofar as is material to the issues presented by this phase of the instant case, is identical with that of Section 20 (18 U.S.C.A. 242) of the Criminal Code. It follows that R.S. 1979 (42 U.S.C.A. 1983) must be construed as in pari materia with Section 20 (18 U.S.C.A. 242). The phrase 'under color of any statute * * *' employed in R.S. 1979 (42 U.S.C.A. 1983) must be construed as was the phrase 'under color of any law' in the Screws case.'
 Valle v. Stengel, 3 Cir., 176 F.2d 697, at page 702, '* * * Section 1 of the Fourth Civil Rights Act. Act of April 20, 1871, 17 Stat. 13, Now R.S. Section 1979 (42 U.S.C.A. 1983) * * * is the civil counterpart of Section 20 (18 U.S.C.A. 242) of the Criminal Code.' We have applied this construction, Lewis v. Brautigam, 5 Cir., 227 F.2d 124, as did the Sixth Circuit, McShane v. Moldovan, 172 F.2d 1016.
 
 
 [12]
 With all the tempest over the failure of the complaint to allege the 'facts' on the nature, wording, date, etc. of the order, the Terminal Company in its brief, page 12, comes forward with, and thus permits us to make illustrative reference to, the Public Service Commission General Order No. T-2 (1923) which seems quite demanding in its terms:
 'All common carriers by rail shall provide and maintain at each of their passenger depots where agents are employed, for the * * * accommodation of passengers * * *, separate * * * waiting rooms for the white and negro races * * *.'
 
 
 [13]
 See the more recent statute concerning motor transportation companies, Title 48, Code of Alabama, Section 301 (31a). What is left to subsequent orders to be issued by the Public Service Commission for railroad waiting rooms is mandatorily spelled out for bus operations:
 'All passenger stations in this state operated by any motor transportation company shall have separate waiting rooms or space and separate ticket windows for the white and colored races * * *.'
 And see Note 1 of Browder v. Gayle, 142 F.Supp. 707, at page 710.
 
 
 [14]
 'If two or more persons in any State * * * conspire * * * for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; * * *; in any case of conspiracy * * *, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is * * * deprived of having and exercising any right or privilege of a citizen of the United States, the party so * * * deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.'
 Jurisdiction for such actions is expressly granted 28 U.S.C.A. 1343(1).
 
 
 [15]
 United States v. Williams, 341 U.S. 70, 80, 71 S.Ct. 581, 586, 95 L.Ed. 758, 766, with inside quotation marks deleted