**Leon M. RAAB, Plaintiff,**

v.

**Dan PATACCHIA, William Botts, Joe Lawless, Robert O. Bailey, Donald E. Olson, Culver City Star News, Eugene L. Mueller, Defendants.**

**No. 64-727.**

United States District Court
S. D. California,
Central Division.

Aug. 4, 1964.

Burton Marks, Beverly Hills, Cal., for plaintiff.

Lillick, Geary, McHose & Roethke, Los Angeles, Cal., for defendant Culver City Star News.

Donald E. Olson, Culver City, Cal., for defendants Donald E. Olson, Dan Patacchia, Robert O. Bailey and Eugene L. Mueller.

BYRNE, District Judge.

On June 1, 1964, Leon M. Raab, plaintiff, filed a complaint alleging violations of his civil rights [42 U.S.C. § 1983], against various officials of the city of Culver City, California, and against the Culver City Star News. The complaint asked for an injunction and damages.

The facts, stated in a way most favorable to the plaintiff, (as shown by the complaint) are set out in the ensuing paragraphs.

Plaintiff is the president of the Panorama Club, Inc. (Panorama), a corporation with a place of business within Culver City, California. This is a private club not open to the general public. Panorama conducts a game of cards called "Panguingui" for its members. The game is played for money. In short, Panorama is a "private" gambling establishment. When Panorama opened for business it had not bothered to comply with Culver City licensing or zoning ordinances. Furthermore, the operation of such an establishment violated the Culver City anti-gambling ordinance (assuming the ordinance is valid—Culver City Ordinance 523 § 3).

On May 7, 1964, Panorama, apparently feeling that the gambling ordinance would be enforced against it and its members, filed an action in the Superior Court of the State of California in and for the County of Los Angeles [Panorama Club, Inc. v. City of Culver City and Eugene L. Mueller, Case No. 838,-252]. The complaint in that case alleged that the gambling ordinance was preempted by the State of California's gambling statutes [Penal Code, §§ 330, 331] and that as a result it was unconstitutional under the California Constitution Art. 11, § 11. Pursuant to this complaint the Superior Court issued a temporary restraining order against Culver City and Mueller. The order restrained them from enforcing Culver City Ordinance 523 § 3 against Panorama pending a hearing on Panorama's motion for a preliminary injunction.

Despite this the Culver City defendants, prompted and encouraged by the Culver City Star News (Defendant News), decided that they would close Panorama, since they considered it execrable. Pursuant to this decision they obtained a warrant for the arrest of plaintiff on the grounds that he was violating the Culver City "licensing and zoning" ordinances and not on grounds that he was violating the gambling ordinance.

The club has a front door which leads to a lobby or reception room only. There is a sign on the front door which indicates that it is a private club open to members only. However, the plaintiff does not say that this door is kept locked, and, I assume, it is not. Another door leads from this reception room to the gaming room. This door is opened by a key card, and even members cannot enter the "private room" until they have signed the registry. It seems that this lobby or reception room is strictly for the purpose of receiving and registering people who are coming to use the "private room". Indeed, considering the great precautions taken with regard to the private room, it is probable that the easy access to the reception room is for the purpose of letting people come in to register for membership or on other non-"private room" business.

At about 4:30 P.M. on the day in question five or six unidentified plainclothes police officers came (or in the complaint's words "rushed") through the door leading from the outside to the reception room of the club. After entering they stated to the club's receptionist: "Stand up, we are police officers, this is a raid." They then ordered him to open the inner door and he complied. The five officers entered the inner room followed by five or six reporters, including a T.V. cameraman, who were in turn followed by some twenty to twenty-five policemen, some of whom were carrying billy clubs. Also, a number of the defendants accompanied the police on this raid. The raid caught about fifty club members, including plaintiff, by surprise. Their "harm-

less and peaceable social recreation" was thereby interrupted and interfered with. Eleven persons in all were arrested and were taken before the Municipal Court in Culver City where they pleaded not guilty to violations of the zoning and licensing ordinances.

Plaintiff says that the Culver City defendants, incited by slanted editorials in the Defendant News, will use all sorts of stratagems, including undercover agents and arrest warrants, to gain access to the private room of the Panorama Club and interfere with the games being played therein. They will not make any proper demand upon the persons named in the warrants, but will merely conduct illegal raid upon raid. Moreover, the plaintiff states, since there are already cases pending by and against plaintiff and others in the courts of California, it is a violation of equal protection of the laws to keep harassing him and his fellow club members. However, plaintiff does not allege that the zoning or licensing ordinances violate the Constitution of the United States or the California Constitution. Moreover, he does not allege that the gambling ordinance violates the Federal Constitution.

Thus, although plaintiff has not complied with the Culver City zoning and licensing ordinances and although the validity of these ordinances as well as the city gambling ordinance is at issue in cases now pending in the state courts, including prayers for injunctive relief, plaintiff asks this Court to enjoin the defendants from interfering with the privacy of plaintiff and others at their private club and from initiating any further prosecution against them.

All of the defendants, except William Botts and Joe Lawless, filed a motion to dismiss the complaint for failure to state a claim upon which relief can be granted. The moving parties will hereafter be referred to as defendants.

This action is brought under 42 U.S.C. § 1983, which reads as follows:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

It is now well established, at least in this circuit, that the only elements which need to be present in order to establish a claim under this statute are: (1) that the conduct engaged in by the defendants was under color of state law; and (2) that such conduct subjected the plaintiff to the deprivation of rights, privileges, or immunities secured by the Constitution of the United States. Marshall v. Sawyer, 301 F.2d 639 (C.A.9).

Defendants do not claim that their acts were not under color of state law. In fact they could not do so. It is perfectly clear that the police and city officials were acting under color of state law, for any wrongdoing that they are guilty of was made possible by reason of the power vested in them by virtue of state law. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Moreover, although the Defendant News is not a state agency or official it can also be held since it is said that it incited, assisted, and finally participated in the acts alleged to have deprived the plaintiff of his civil rights. See, Baldwin v. Morgan, 251 F.2d 780 (5th Cir. 1958).

That leaves the vital question of whether or not the plaintiff has been deprived of any substantial constitutional rights.

In Monroe v. Pape, supra, the Supreme Court declared that where police officers conducted an unreasonable search and seizure and illegally arrested the plaintiffs they could be held liable under 42 U.S.C. § 1983. Of course, that case presented an outrageous deprivation of the plaintiff's rights. Their home was broken into by thirteen officers in the early

morning hours, and was ransacked. The plaintiff parents were required to stand naked in front of their children and the officers. And the plaintiff father was arrested, held on open charges and subsequently released without being charged with any crime whatever. All this was done without an arrest or search warrant.

Since Monroe v. Pape the Court of Appeals for the Ninth Circuit has had many opportunities to interpret the scope of § 1983. It has been generous in its interpretations. In Cohen v. Norris, 300 F.2d 24 (9th Cir. 1962) the plaintiff filed an action alleging various harassments by the police, for the purpose of humiliating and injuring him. He alleged that he was searched in the presence of others without a warrant and not pursuant to a valid arrest, and that he was struck in the private parts by the officers. The court said that this would sustain a cause of action. However, the court found that a count which alleged that plaintiff was searched but did not allege physical injury, lack of authority, or even directly allege humiliation stated no cause of action. And in Smith v. Cremins, 308 F.2d 187 (9th Cir. 1962) the plaintiff was attempting to distribute religious tracts protesting the arrival of Mikoyan in Los Angeles. The police seized him without arresting him, and took the tracts away from him. The court held that he could state a cause of action under the Civil Rights Act, even without alleging that the purpose of the officers was to discriminate against him. Finally, in York v. Story, 324 F.2d 450 (9th Cir. 1963) cert. denied, 376 U.S. 939, 84 S.Ct. 794, 11 L.Ed.2d 659 (1964) the complaint alleged the following situation: Plaintiff went to the police station in Chino, California, to report an assault which had been made upon her. The friendly helpful policemen at the station informed her that in order to preserve evidence they would have to photograph her in the nude. Although there was a policewoman in the station the policemen in charge handled the whole matter without disturbing her. Plaintiff protested but she finally undressed and one of the policemen photographed her in various indecent poses. Later that month she was told that the pictures had not come out and had been destroyed. The next thing plaintiff heard of the matter was that the police officers were circulating the photographs among their friends in the department. Plaintiff brought a civil rights action and the Court of Appeals for the Ninth Circuit held that this invasion of the right of privacy was an invasion of the plaintiff's liberty. As such it violated due process as guaranteed by the Fourteenth Amendment. The court also suggested that the picture taking itself might be considered an unreasonable search. These cases demonstrate the fact that the courts are now willing to go very far in finding that constitutional rights have been violated when despicable action on the part of police officers is involved. Of course, in each of the discussed cases the action of the police was both callous and shocking.

Plaintiff's contentions are twofold: (1) he is being denied equal protection of the laws; and (2) he has been and will be denied due process.

Plaintiff's equal protection contention is almost too frivolous to warrant comment. He does not claim that Culver City's zoning or licensing ordinances violate the Constitution of the United States, either on their face or in their application to him. Instead, he puts forth the proposition that if a person goes into a city and begins to violate the zoning ordinances and the city charges him with a misdemeanor for so doing, he ought to be able to continue his violation until the whole matter has gone through the courts, even if the zoning ordinance is not attacked as unconstitutional. Plaintiff cites no authority for this proposition, and I know of none. It is true that if the complaint alleged that the ordinances were unconstitutional there might be grounds for enjoining their operation pending the action. Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). That is not the

case here. It is difficult to imagine a more pernicious and destructive invasion of the delicate balance between the federal and local governments than the one plaintiff asks for. In simple terms he wants to keep running his gambling parlor despite the fact that in doing so he violates zoning and licensing, and possibly valid gambling, ordinances. He asks this Court to require city officials to let him do so. That cannot and should not be done. If plaintiff violates valid laws he is subject to the punishment therefor, and his constitutional rights are not violated.

■ Plaintiff's due process argument presents a somewhat more difficult question. Accepting the complaint's allegations as true, the purpose of the city officials' actions here is to harass, molest and otherwise interfere with the privacy of plaintiff and his fellow members at the private club by preventing them from gambling. To carry out this purpose they conducted a raid on the Panorama Club with a warrant for the arrest of plaintiff. When the defendants arrived at the club, rather than announce that they were there to arrest plaintiff, they said, "This is a raid," which, of course, it truly was. They then required the opening of the inner door, looked in, and found fifty people gambling. It then became necessary to take immediate action since crimes were being committed in their presence.

It should first be asked whether the above-mentioned action constituted an illegal arrest in violation of the plaintiff's constitutional rights. In so doing it can be assumed that the warrant itself was valid on its face since plaintiff does not allege that it was not. Thus the question of "probable cause" need not be considered at this point. But an arrest must also be executed in a legal manner. In deciding whether the procedure used by the officers here was legal or not, local law must be looked to. Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958). Under Calif.Pen. Code § 844 an officer may:

"* * * break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired."

The California courts have eviscerated this code section where narcotic offenses are involved because there is a substantial chance of destruction of evidence or injury to the officers if they hesitate and give notice of their reason for being there. See, People v. Hammond, 54 Cal. 2d 846, 9 Cal.Rptr. 233, 357 P.2d 289 (1960), and People v. Guthaus, 208 Cal. App.2d 785, 25 Cal.Rptr. 735 (1962). However, when the officer is attempting to arrest someone who has committed a mere misdemeanor zoning or licensing violation there does not seem to be any reason whatever for dispensing with the requirements of the Penal Code. I assume that the officers in this case had reasonable cause to believe that plaintiff was in the club's private room, since it was his place of business. I also see no reason to hinge the question of legality on the distinction between the receptionist being just outside the door of the private room rather than just inside it. Furthermore, the complaint's own allegations support the inference that entering the reception room from the unlocked outside door did not violate anyone's constitutional rights. Thus, the only question remaining is whether the officers "explained the purpose for which admittance . . . [was] desired." According to the complaint they never mentioned an arrest warrant. Their only comment was, "Stand up, we are police officers, this is a raid." Although that certainly explained the true purpose for which admittance was desired it hardly indicated that the police officers were there to serve an arrest warrant. In fact, this amounted to no explanation at all. It was no more than saying, "we are police officers, open the door." It may well be that this technically constituted an illegal method of serving of the

warrant—an illegal arrest—under the California law. Such illegality *might* require suppression of evidence so obtained. But it does not seem that the inquiry should end there. As has already been indicated, the courts have not undertaken to narrowly confine their language when discussing Civil Rights cases. But in each case analyzed above, the action of the police was shocking: breaking into homes at night; making people stand naked before their children and before the police; taking indecent photographs and passing them around; arbitrarily seizing religious tracts and tearing them up; and striking a man in the groin. These are all serious wrongs to the citizen. But the Constitution should not be trivialized. Here, the only true complaint of the plaintiff, which this Court can recognize, is that the police said, "Stand up, we are police officers, this is a raid", rather than, "Stand up, we are police officers, we have a warrant for the arrest of Leon M. Rabb." It does not seem that this is sufficient to spell out a claim for damages for violation of plaintiff's civil rights. This is supported by Cohen v. Norris, 300 F.2d 24 (9th Cir. 1962), where the court said that a count which did not allege lack of a warrant, alleged no assault, and only hinted at a purpose to humiliate was insufficient. Perhaps the maxim "de minimis" should be applied here. Whatever words are used to express the theory which should be applied, the general principle remains the same. Neither the Constitution nor the Civil Rights Act ought to be taken as proscribing such trivial violations of state law in making an otherwise valid arrest. The remainder of plaintiff's complaint, the entry of a large number of police officers, and photographers, adds nothing. Once the door was opened and it was clear that crimes were being committed by a large number of people, the arresting officers had a right to get aid. The fact that the aid was conveniently handy does not vitiate that right. Nor does the presence of photographers. Plaintiff does not show sufficient prejudice to his rights to warrant a finding that the Federal Constitution and the Civil Rights Act will offer him relief.

The action is dismissed for failure to state a claim upon which relief can be granted, since plaintiff does not spell out any cognizable violation of his constitutional rights. Counsel for defendants is directed to prepare, serve and lodge a formal order for the court's signature.