## Richmond.

HAMILTON'S ADMINISTRATRIX v. ALLEGHANY ORE & IRON CO.

November 19, 1908.

1. MASTER AND SERVANT—*Safe Place—Usual Methods—Negligence—Case at Bar.*—Where it appears that the method of work and the precautions taken and required by the defendant for the protection of the employees engaged in blasting ore were such as were usual, and that nothing more could reasonably have been done than was done for their protection, there can be no recovery by the personal representative of a miner who was killed by a stone falling on him while at work in the mine. The defendant cannot be said to have negligently failed to provide a reasonably safe place for the miner to work in.

2. MASTER AND SERVANT—*Safe Place—Obvious Dangers—Known Dangers—Negligence—Case at Bar.*—The failure on the part of the defendant to cover with timbers an open space overhead in an ore mine so as to protect miners from falling stones is not such negligence as will render it liable for the death of a miner killed by a stone falling on him from above, where it appears that the deceased was an experienced miner who had worked in that mine off and on for seven or eight years, and at the place where he was struck for a year, and there is no evidence that he ever regarded the place as unsafe or requested that it be made safe, or that the defendant ever promised, directly or indirectly, that it would extend the timbers over his place of work, or that he was induced to continue at work there by reason of any such promise.

Error to a judgment of the Circuit Court of Rockbridge county in an action of trespass on the case. Judgment for the defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*Glasgow & White,* for the plaintiff in error.

*R. L. Parrish, G. D. Letcher* and *Cabell & Cabell,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

Mathew Hamilton received injuries from which he died whilst working in a mine of the Alleghany Ore and Iron Company. His administratrix, the plaintiff in error, brought this action to recover damages therefor, on the ground that his death was caused by the negligence of that company.

The defendant demurred to the evidence, and upon that demurrer there was a judgment in its favor. To that judgment this writ of error was awarded.

The negligence charged in the declaration was that the defendant company failed to furnish the plaintiff's decedent, one of its employees, a reasonably safe place in which to work, in this, that it left the rocks and stones in the sides or walls of its mine loose and in such a condition that they were liable to fall from their places upon its servants when working in the mine, and that one of such stones did fall upon and cause the death of the plaintiff's intestate.

The defendant's mine was an old one, which it had been working for several years. Prior to its operations therein, the mine had been worked by other companies. The opening in which the deceased was injured was known as "Cut No. 1." It was made many years before on the side of a mountain, and extends down and into the mountain. The ore which was being mined lay in what is known as "fissure vein," being deposited between two walls, one known as the "hanging wall," and the other as the "foot wall," on opposite sides of the opening as it extends down into the ground. The width of the mine or opening between these two walls is not the same all the way, but generally speaking they are parallel to each other, and extend to the bottom or car level, a distance of some two hundred feet, at an angle of 60 or 65 degrees.

The place where the plaintiff's intestate was working was from 150 to 175 feet from the top of the opening, and 25 or 30 feet above the car level where the ore was loaded and hauled from the mine. Over this car level or way there was "lagging" or timber placed to prevent stones from falling upon the men loading the cars. This "lagging," which or the most of which had only been put in some eight or ten days before the accident, was about sixty feet above the car level, but did not extend as far into the mine as the "stope" or breast of the ore which was being mined.

Some 10 or 15 feet above where the deceased and another employee were drilling holes preparatory to blasting out the ore, two other employees were engaged in the same kind of work. While thus employed, a stone weighing from 15 to 20 pounds came down from above, struck the "foot wall" about opposite the point where the last-mentioned employees were at work, burst in a number of pieces, and one of these pieces struck the plaintiff's intestate, who was then near the "hanging wall" some 10 or 15 feet below, causing his death.

The witnesses who attempt to describe the opening where the plaintiff's intestate lost his life and the situation of the employees engaged in blasting ore at that time refer to diagrams which are not before this court, and indicate with their hands, or by other means than words, what they mean, so that it is very difficult, if not impossible, for this court to see the case as it was presented to the trial court. It appears, however, pretty clearly, that above the point where the deceased was working there was an uncovered space, not less than three nor more than six and one-half feet wide, and not less than five nor more than nineteen feet long, through which stones might fall from above upon the employees engaged in blasting ore.

The plaintiff contends that it was negligence in the defendant not to have "lagged" or covered this open space with timber, and thus have protected its employees from falling stones. The uncontradicted evidence is that, while the mine had been

worked for many years, neither the defendant nor any of its predecessors who had worked it had ever done this, and that, in working such veins in other mines, it was not customary to do this, and very difficult, if not impossible, to keep timbers or "lagging" above the mining, because of the blasting which was going on every day immediately under it.

The evidence of the plaintiff, as well as that of the defendant, shows, that while there is always some danger from falling stones in working such mines, the method of work and the precautions taken and required by the defendant for the protection of its employees engaged in blasting ore were such as were usual, and that nothing more could reasonably have been done than was done for their protection.

It is true the plaintiff insists that it was the intention of the defendant to extend the "lagging" over the place where the deceased was working, and that he continued his work because this was to be done. There is some slight evidence that the "lagging" was ordered to be extended over the blasting employees, though the weight of the evidence of the plaintiff, as well as that of the defendant, is that the "lagging" had been extended as far as was intended, and that it was erected chiefly, if not entirely, to guard against stones loosened by freezing and thawing during cold weather—a period which had not arrived. There is some evidence tending to show that in one or more casual conversations, when the deceased, the foremen Groah and Doc Hamilton, and others were present, the safety of the mine was discussed, and the foreman said it was safe. But there is no evidence whatever that the deceased, who was an experienced miner, and who had been working in that mine off and on for seven or eight years, and at the place where he was struck with the falling rock something like a year, ever thought that his place of work was dangerous, much less made complaint that it was, and asked to have it made safe. It is certain that it does not appear that the defendant ever promised him expressly or impliedly that it would extend the "lagging" over

his place of work, or that he was induced to continue at work there by reason of any such promise.

Neither is there any foundation for the contention that the defendant failed to properly inspect the mine. The proof is that it was inspected daily by the defendant's foreman, and that it was made the duty of the employees engaged in blasting, after each blast, to see that all stones and ore loosened in their place of work were taken down before going to work again.

Upon the whole case, without further discussing the evidence, it is clear, we think, that plaintiff failed to establish a case of negligence on the part of the defendant, and that the circuit court did not err in sustaining the demurrer to the evidence. Its judgment must, therefore, be affirmed.

*Affirmed.*