Charles E. WILLIAMS, Appellant,

v.

HOT SHOPPES, INC., Appellee.

No. 15610.

United States Court of Appeals
District of Columbia Circuit.

April 20, 1961.

As Amended May 22, 1961.

Messrs. Phineas Indritz, and Charles E. Williams, Washington, D. C., for appellant.

Mr. Charles J. Steele, Washington, D. C., with whom Messrs. Roger J. White-

**836**

ford and John J. Carmody, Washington, D. C., were on the brief, for appellee.

Before WILBUR K. MILLER, Chief Judge, and EDGERTON, PRETTYMAN, BAZELON, FAHY, WASHINGTON, DANAHER, BASTIAN and BURGER, Circuit Judges, sitting en banc.

WASHINGTON, Circuit Judge, with whom WILBUR K. MILLER, Chief Judge, and PRETTYMAN, DANAHER, BASTIAN and BURGER, Circuit Judges, concur.

Appellant Charles Williams, a resident of the District of Columbia, brought suit in the District Court against appellee Hot Shoppes, Inc., a Delaware corporation which operates restaurants in several states and the District of Columbia, to recover a statutory penalty of $500 under Sections 1 and 2 of the Civil Rights Act of 1875, and damages of $5,000 under 42 U.S.C.A. §§ 1981, 1983, for alleged deprivations of his civil rights. In essence, appellant's claim is that on November 5, 1959, appellee's manager denied him service at its restaurant in Alexandria, Virginia, solely because appellant is a Negro, and because Virginia law requires restaurants either to segregate their facilities or to exclude Negro pa-

trons.[1] Appellant contended that this refusal to serve him was State action of the sort prohibited by the Fourteenth Amendment and the civil rights laws. The District Court held to the contrary and dismissed the complaint. This appeal followed.

## I.

■ First of all, we think that the District Court properly dismissed the claim for the statutory penalty under Sections 1 and 2 of the Civil Rights Act of 1875.[2] These statutory provisions were held unconstitutional as applied to private intrastate racial discrimination in the Civil Rights Cases, 1883, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835. Later, in Butts v. Merchants' & Miners' Transportation Co., 1913, 230 U.S. 126, 33 S.Ct. 964, 57 L.Ed. 1422, the Supreme Court held that these provisions could not be applied to penalize racial discrimination aboard interstate carriers even though the statute could, in that application, be upheld under the commerce power. The Court reasoned that since Sections 1 and 2 were penal in nature and were intended by Congress to have uniform national application, and since the provisions had been declared unconstitutional as applied to private intrastate racial discrimina-

1. A further contention, relative to alleged activities of state officials, will be discussed later in this opinion.

2. Act of March 1, 1875, ch. 114, §§ 1, 2, 18 Stat. 335, provides:

"That all persons within the jurisdiction of the United States shall be entitled to the full and equal enjoyment of the accommodations, advantages, facilities, and privileges of inns, public conveyances on land or water, theaters, and other places of public amusement; subject only to the conditions and limitations established by law, and applicable alike to citizens of every race and color, regardless of any previous condition of servitude.

"Sec. 2. That any person who shall violate the foregoing section by denying to any citizen, except for reasons by law applicable to citizens of every race and color, and regardless of any previous condition of servitude, the full enjoyment of any of the accommodations, advantages, facilities, or privileges in said section enumerated, or by aiding or inciting such de-

nial, shall, for every such offense, forfeit and pay the sum of five hundred dollars to the person aggrieved thereby, to be recovered in an action of debt, with full costs; and shall also, for every such offense, be deemed guilty of a misdemeanor, and, upon conviction thereof, shall be fined not less than five hundred nor more than one thousand dollars, or shall be imprisoned not less than thirty days nor more than one year: *Provided*, That all persons may elect to sue for the penalty aforesaid or to proceed under their rights at common law and by State statutes; and having so elected to proceed in the one mode or the other, their right to proceed in the other jurisdiction shall be barred. But this proviso shall not apply to criminal proceedings, either under this act or the criminal law of any State: *And provided further*, That a judgment for the penalty in favor of the party aggrieved, or a judgment upon an indictment, shall be a bar to either prosecution respectively."

tion, the statute should be held wholly invalid rather than be applied in only a fraction of the cases it was intended to cover. In United States v. Raines, 1960, 362 U.S. 17, 23, 80 S.Ct. 519, 4 L.Ed.2d 524 the Supreme Court expressly reaffirmed the Butts decision. Therefore, even if appellee's conduct is assumed arguendo to be State action, Sections 1 and 2 of the Civil Rights Act of 1875 have no present validity, and appellant's claim under them was properly dismissed.[3]

## II.

We turn now to appellant's claim for damages under 42 U.S.C.A. §§ 1981, 1983.[4] Section 1983 creates a civil action against "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States * * * to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws * * *." In order to constitute conduct under "color of law",[5] within the reach of the Federal Constitution and statutes, it is essential that appellee's refusal to serve appellant be State action. See Burton v. Wilmington Parking Authority, 81 S.Ct. 856; Monroe v. Pape, 1961, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492. It is also clear that there must be a deprivation of a right, privilege or immunity "secured by

the Constitution and laws" of the United States. For example, in the Monroe case, just cited, the plaintiff's immunity from unreasonable search and seizure, guaranteed by the Fourth Amendment to the Constitution, had been grossly violated by the defendants.

In the instant case, the pertinent portions of the complaint are as follows:

"4. On November 5, 1959, plaintiff entered defendant's restaurant at 900 North Washington Street, Alexandria, Virginia, in a peaceful and orderly manner, for the purpose of obtaining food and beverage, while it was then open for business and occupied by others of the public who were then enjoying the accommodations of the business conducted on the premises. But defendant's manager, one Fred McClure, acting within the scope of his authority, refused to serve plaintiff and excluded him from the restaurant, solely by reason of plaintiff's race or color, under the color of state law, custom or usage.

"5. Defendant's manager stated that Virginia law required him to refuse to serve plaintiff and to exclude plaintiff from the dining room; that neither he nor defendant had any personal or other reason for excluding plaintiff from the restaurant except for the understanding that

---

3. A like decision was reached by the Fourth Circuit in another suit brought by appellant, at an earlier date. Williams v. Howard Johnson's Restaurant, 1959, 268 F.2d 845.

4. Sections 1981 and 1983 provide:
   "1981. Equal rights under the law.
   "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 16 Stat. 144, as amended.

§ 1983. Civil action for deprivation of rights.
"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 17 Stat. 13, as amended.

5. This expression is generally used to sum up the words "under color of any statute, ordinance, regulation, custom, or usage." As to "custom or usage," see Williams v. Howard Johnson's Restaurant, supra note 3, 268 F.2d at page 848.

838

Virginia law, as well as the custom and usage of the community, compelled the exclusion of colored persons from the restaurant.

"6. Sec. 18–327, Code of Virginia, requires operators of 'any place of public . entertainment or public assemblage which is attended by both white and colored persons,' to segregate them, under penalty of fine of not less than $100 or more than $500 for each violation of the statute. Sec. 18–328, Code of Virginia, requires patrons to comply with such segregated seating, under penalty of fine of not less than $10 or more than $25 for each violation of the statute; authorizes the operator or manager of the place, 'or any public (sic) [police] officer or other conservator of the peace,' to eject any person who fails to comply with such segregation requirement; and provides that any such ejected person shall not be entitled to a refund of any admission paid by him. These laws, in effect, require operators of places of public accommodation, including the aforesaid restaurant, which are open to the general public, to exclude all Negroes unless special facilities are provided to segregate them from the rest of the public.

"7. The cited Virginia laws impose an economic burden upon defendant by requiring it to erect partitions or separate facilities for white and colored persons in restaurants operated in Virginia, and thus tend to compel defendant, in order to avoid that burden, to exclude all colored persons entirely. It is a violation of the Fourteenth Amendment to the federal Constitution for the State of Virginia to require the exclusion or segregation of persons in places of public accommodation, solely because of their race or color, irrespective of whether such state compulsion is exercised or accomplished directly or indirectly.

"8. The defendant, as well as other public restaurant keepers in Virginia are following, and have for many years followed, a custom or usage of systematically excluding Negroes from their facilities under the color of sec. 18–327, Code of Virginia. *This custom or usage of Virginia has been produced by the interplay of governmental and private action over a long period of time.* By being excluded from public dining facilities by reason of said custom or usage, Negroes, including the plaintiff, are deprived of 'the full and equal benefit of all laws,' respecting access to public restaurants, 'as is enjoyed by white citizens,' under the color of state law, custom or usage, in violation of 42 U.S.C., sec. 1981, and sec. 1, Act of 1875." (Emphasis supplied.)

The complaint is thus grounded upon the theory that the Virginia public assembly statute, Section 18–327 of the Virginia Code,[6] applies to restaurants, and compels segregation therein. This was the theory on which Williams pleaded and argued his case in the District Court, and on which he at first based his appeal to this court. Later, in this court, he advanced a further theory—that appellee's refusal to serve him was caused solely by the understanding generated by the conduct of State law enforcement officials. Appellant now tells us that the police and prosecutors of Virginia have threatened action against restaurants which do not segregate, and that this was state action, whether or not based on any statutory foundation. The complaint does not say this. But appellant argues that it can be read to say it, relying on the italicized portion of paragraph 8, quoted above. It is there alleged that defendant and other restaurant owners have followed "a custom or usage of systematically excluding Negroes from

6. Recently re-enacted as Section 18.1–356 of the Code. See Va.Code Ann., Supp.1960, at § 18.1–356.

their facilities under color of sec. 18–327, Code of Virginia. This custom or usage of Virginia has been produced by the interplay of governmental and private action over a long period of time." The only "custom or usage" alleged is that which arises under color of the statute. Legislative action alone is complained of: nothing is said about executive or police action. The reference to "interplay of governmental and private action" seems clearly to mean that as a result of the governmental action, i. e., the statute, private persons and firms such as defendant have been compelled to discriminate against plaintiff.[7]

The background of this litigation, a matter of public record, may also be noted. Appellant Williams had brought an earlier suit against another restaurant in Virginia, for refusal of service, basing his complaint on the theory of an interference with interstate commerce. When the case came before the Fourth Circuit, appellant conceded that Section 18–327 of the Virginia Code did not apply to restaurants. See Williams v. Howard Johnson's Restaurant, 4 Cir., 1959, 268 F.2d 845, at page 847. The Fourth Circuit unanimously affirmed the dismissal of the complaint, saying that "Unless these actions [of refusing service to Negroes] are performed in obedience to some positive provision of state law they do not furnish a basis for the pending complaint." Ibid. The Fourth Circuit's opinion came down on July 16, 1959. The incident at the Hot Shoppe restaurant, on which the present suit is based, occurred on November 5, 1959. The complaint herein, filed on November 25, 1959, was apparently framed to fit the quoted language of the Fourth Circuit, relying on Section 18–327 as the "positive provision of state law" which would provide the basis of the new action.[8]

The rule in Conley v. Gibson, 1957, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed. 2d 80, on which appellant relies, is of no help to him. That rule, that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief," cannot be used to justify the filing of unsworn statements in an appellate brief which would in effect substitute a new complaint for the old. The essence of modern pleading is that there be adequate notice to the defendant of plaintiff's claims. Here there is no allegation in the complaint as to threatening activities on the part of Virginia police and prosecutors, and, equally important, no allegation whatever that the defendant actually knew of any such activities, or that the refusal to serve plaintiff was based on fear of such activities or was in any way influenced by them, if in fact they existed.[9]

7. The words "interplay of governmental and private action" are evidently derived from the opinion in N. A. A. C. P. v. Alabama, 1958, 357 U.S. 449, at page 463, 78 S.Ct. 1163, at page 1172, 2 L.Ed.2d 1488. The Court was there speaking of the state's action in seeking to compel—by statute—disclosure of the names of members of the N.A.A.C.P., which would allegedly be followed by private action in the shape of economic reprisals and "other manifestations of public hostility." At page 462 of 357 U.S., at page 1172 of 78 S.Ct. Legislative action was the "governmental action" referred to in the N.A.A.C.P. case; the same is true in this case.

8. This recital is not intended to cast any reflection on appellant, whose desire to obtain equality of treatment for members of his race is entitled to respect, but to illuminate the theory on which the present complaint was brought.

9. All that appellant has told us in writing on the subject appears at page 9 of his supplemental memorandum in this court, where he says:
"Va.Code sec. 18–327 has been widely regarded as compelling racial segregation in places of public accommodation of all sorts, including restaurants. Such belief was supported by the decisions of the United States District Court for the Eastern District of Virginia (per Judge Albert V. Bryan who has had long experience with Virginia law) that this provision applies to restaurants. See Nash v. Air Terminal Services, 85 F.Supp. 545, 548 (1949); Air Terminal Services v. Rentzel, 81 F.Supp. 611 (1949). This

The complaint, in our view, alleges no more than this: that the restaurant manager discriminated against plaintiff because he believed he was compelled to do so by the Virginia statute. Accordingly, we need not decide whether a cause of action would be stated if the restaurant manager had been compelled to discriminate by administrative officers of the state in the absence of an applicable statute, since that is not alleged.

## III.

Decision whether the complaint, so read, states a claim for damages under 42 U.S.C.A. §§ 1981 and 1983 would depend upon the answers to these questions: (1) Does the Virginia public assembly statute apply to restaurants, and require their owners to segregate by race? (2) If it does not so apply, has appellee nevertheless deprived appellant of a federally-protected right, under "color of law"? (3) If it does apply to restaurants, is the statute unconstitutional? (4) If it is unconstitutional, but appellee relied on it in good faith, has appellee subjected itself to damages for depriving appellant of a federally-protected right, under color of law? (5) Has there in any event been "state action" as distinguished from private action? The answers to all these questions, in greater or lesser degree, must depend upon the interpretation to be given to the Virginia public assembly statute, Section 18–327 of the Code. No Virginia court, as far as we are aware, has ever published an opinion on the matter. The Attorney General of the State, in a well-reasoned opinion, has said that in his view the statute has no application to restaurants.[10] If he is right, the appellant's cause of action, as stated in the complaint, disappears. The temptation is great to indicate our agreement with his view, and let the case be disposed of on that basis, i. e., an affirmance without more.

■ The Supreme Court has many times indicated, however, that in situations like the present, where the solution of novel and serious constitutional questions depends on the interpretation to be given a state statute, not yet construed by the state courts, the Federal courts should abstain from interpreting the state statute.

Appellant urges that the doctrine of abstention is not applicable here. He contends that the interpretation to be given Section 18–327 is not potentially dispositive of the case, and maintains (1) that an action will lie, under 42 U.S.C.A. § 1983, upon proof of deprivation of rights "under color of * * * custom, or usage", without reference to state law; and (2) that "state action" includes the acts of a private person performed under supposed compulsion of state law, even though such acts are not so compelled, provided only that the mistake of law be reasonable.

■ Both these contentions must be rejected. As to the argument based upon the "custom or usage" language of the statute, we join with the unanimous decision of the Fourth Circuit in support of the proposition that—

> "The customs of the people of a state do not constitute state action within the prohibition of the Fourteenth Amendment." Williams v. Howard Johnson's Restaurant, 4 Cir., 1959, 268 F.2d 845, 848.

A reading of the statute as broad as that urged by appellant here would raise grave constitutional questions, and in

---

widespread belief was also fostered by the repeated public expressions over the years by many prosecuting officials of Virginia that racial segregation in eating places was required by Virginia law.[1] [[1] E. g., Washington Post, June 24, 1960, p. A–1.]"

Later, appellant filed with us a number of newspaper clippings in support of the

statement last made. Assuming the clippings to be correct reports of various episodes, there is no allegation that they came to appellee's attention, or influenced its action.

10. See letter of Hon. Albertis S. Harrison, Jr., Attorney General of Virginia, under date of August 24, 1960, attached as an Appendix hereto.

fact would be contrary in substance to the holding in the Civil Rights Cases, 1883, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835.

Similarly, the argument based upon reasonable mistake of law reaches too far beyond the established lines of constitutional authority to be sustained. Under existing decisions, "color of law" requires a vesting of *actual* authority of some kind. In Screws v. United States, 1945, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495, it was established that the unlawful acts of an individual might be imputed to the state (for purposes of applying the Fourteenth Amendment) if the state had done acts clothing the wrongdoer with the trappings of its sovereignty. A similar view is implicit in the recent pronouncement of the Supreme Court on the subject in Monroe v. Pape, supra. But where the state has done nothing of that sort, we fail to see how the acts of a wrongdoer, no matter how reasonable his mistake of law, may be imputed to the state.

We conclude therefore that relief would be barred, and the suit concluded, by a determination in the Virginia courts that Section 18–327 does not apply here. This being so, we believe that we are obliged on the present facts to refrain from decision and permit the state courts to rule upon the question of state law.

██ We consider such abstention not merely within the discretion of this court, but compelled by the reasoning implicit in a series of recent decisions of the Supreme Court. We are mindful that "no principle has found more consistent or clear expression than that the federal courts should not adjudicate the constitutionality of state enactments fairly open to interpretation until the state courts have been afforded a reasonable opportunity to pass upon them." Harrison v. N. A. A. C. P., 1959, 360 U.S. 167, 176, 79 S.Ct. 1025, 1030, 3 L.Ed.2d 1152.

It is, at the very least, unseemly for a Federal court to "guess at the resolution of uncertain and difficult issues of state law." Alleghany County v. Mashuda Co., 1959, 360 U.S. 185, 187, 79 S.Ct. 1060, 1062, 3 L.Ed.2d 1163. And the Supreme Court has said that where the issue "involved the scope of a previously uninterpreted state statute which, if applicable, was of questionable constitutionality Leiter Minerals, Inc. v. United States, 352 U.S. 220, 229 [77 S.Ct. 287, 1 L.Ed.2d 267], we have required District Courts, and not merely sanctioned an exercise of their discretionary power, to stay their proceedings pending the submission of the state law question to state determination." Louisiana Power & Light Co. v. City of Thibodaux, 1959, 360 U.S. 25, 28, 79 S.Ct. 1070, 1072, 3 L.Ed.2d 1058.

There can be no dispute about the presence of a grave and novel Federal constitutional question in the case at bar. Much more than the constitutionality of the Virginia statute is at stake. The issue appellant seeks to have us decide is whether there is a federally-protected right to be free of state-compelled segregation in a privately-owned and operated restaurant, or to put it more narrowly, whether the Fourteenth Amendment has empowered the Congress to provide a civil remedy against private restaurant operators who discriminate by reason of race under compulsion of state law, and whether Congress did provide such a remedy when it passed the statute appellant here invokes, Section 1983 of Title 42. The scrupulous care with which the Supreme Court has recently treated similar questions, see Boynton v. Commonwealth of Virginia, 1960, 364 U.S. 454, 81 S.Ct. 182, 5 L.Ed.2d 206, is a clear warning against the dangers of premature decision. It would be most rash for us to act gratuitously where the claimed rights and privileges of one group of citizens are arrayed against the claimed rights and privileges of other groups. Grave problems of Federal-state relationships are also presented.

While the roots of the abstention principle may lie in the Federal equity jurisdiction, see Railroad Commission of Texas v. Pullman Co., 1941, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971, the Supreme Court has clearly indicated in two recent

cases that the application of the abstention doctrine does not depend on whether a complaint has demanded equitable or legal relief. See Louisiana Power & Light Co. v. City of Thibodaux, supra; Clay v. Sun Insurance Office, 1960, 363 U.S. 207, 80 S.Ct. 1222, 4 L.Ed.2d 1170. That relief at law is demanded here is thus no bar to abstention.

Nor do we deem it material that the potential area of conflict in the instant case lies between the Federal courts and the state acting through its legislature, rather than through its administrative agencies. Certainly where Federal courts run the risk of becoming enmeshed in the functions of state administrative bodies vested with the responsibility for developing and applying a continuing state policy, special reasons for abstaining are present. Burford v. Sun Oil Co., 1943, 319 U.S. 315, 63 S.Ct. 1098, 87 L. Ed. 1424; Alabama Public Service Commission v. Southern Ry., 1951, 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002. That is not to say, however, that conflict with a state administrative agency is a *sine qua non* for the application of the doctrine; and it is clear from the Supreme Court's decision in Harrison v. N. A. A. C. P., 1959, 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed. 2d 1152 that such is not the case. Like Harrison, the case at bar involves potential Federal interference with a state policy of segregation as expressed through its statutes.[11] It has been argued that such a policy is not entitled to deference. Mr. Justice Douglas, dissenting in Harrison, points out that jurisdiction there was largely premised on the Civil Rights statutes (among them 42 U.S.C.A. § 1983, the one principally at issue here), and urges that by directing abstention the Supreme Court had failed "to perform the duty expressly enjoined by Congress on the federal judiciary." 360 U.S. at page 184, 79 S.Ct. at page 1034. The significance of this contention lies in the fact that it was obviously considered and rejected by a majority of the Supreme Court.

■ For these reasons, and guided by the decision of the Supreme Court in Harrison, supra, we abstain from decision on the merits in this case, pending resolution of the meaning and application of Section 18–327 of the Virginia Code by the courts of that state.

### IV.

We do not reach, and hence do not express any view concerning, the questions of law discussed in the dissenting opinion, other than as may appear in the foregoing pages.[12]

11. In Harrison a set of five recently enacted Virginia statutes designed to limit the legal representation and lobbying activities of the NAACP in Virginia were challenged. The Association, prior to any test of the applicability of the statutes in the Virginia courts, brought an action to have the Federal District Court declare them unconstitutional and enjoin their enforcement. The three-judge constitutional court, basing its decision on a finding that the legislation had been enacted to nullify the effect of the Supreme Court mandate in Brown v. Board of Education, 1954, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873, held three of the statutes unconstitutional on their face, but abstained, staying proceedings pending construction by the state courts, as to the other two. On direct appeal by Virginia from the invalidation of her barratry and lobbying statutes, the Supreme Court in a six-to-three decision reversed the lower court and directed that these three acts should likewise have been subjected to "the possibility of limiting interpretation" by the Virginia courts.

12. Some of the practical consequences of the theory of the dissent—that private persons may be sued for acts committed by them under the compulsion of state officials—should perhaps be noted. One of these would appear to be that the courts of the District of Columbia would be called upon to evaluate the conduct of state officials, alleged to have infringed Federal rights, if the plaintiff has succeeded in obtaining proper service here on the person or corporation alleged to have been coerced by such state officials into taking the action complained of. Many chain stores and other great business enterprises, transacting business here and in a number of states, are subject to service of process in this jurisdiction. (Venue problems might exist as to an individual defendant, but hardly as to a

The judgment of the District Court will be vacated and the cause remanded. The District Court, of course, is authorized to conduct such further proceedings or take such further action as may be deemed appropriate and not inconsistent with this opinion.

So ordered.

FAHY, Circuit Judge.

I concur in vacating the judgment and remanding the case to the District Court. This will afford the parties opportunity to obtain a ruling of the Virginia courts on the question of the applicability to restaurants of section 18–327 of the Virginia Code. I would require the District Court, however, to retain jurisdiction so that it may itself decide the case after such opportunity has been afforded, taking into consideration the decision of the Virginia courts if obtained, or if not obtained within a reasonable time then redeciding the case itself. The Supreme Court has approved this procedure in comparable circumstances, saying,

"By retaining the case the District Court, of course, reserves power to take such steps as may be necessary for the just disposition of the

litigation should anything prevent a prompt state court determination." Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25, 31, 79 S.Ct. 1070, 1074, 3 L.Ed.2d 1058.

BAZELON, Circuit Judge, with whom EDGERTON, Circuit Judge, joins (dissenting).

I agree with the majority that, we should abstain as to the claim under 42 U.S.C.A. § 1983 that § 18–327 Code of Virginia required the restaurant to provide separate facilities for Negro patrons or to exclude them.[1] But I think that the complaint states another and independent claim for relief under § 1983—namely, that appellee's refusal to serve appellant was compelled by the action of State law enforcement officials in requiring separation of the races in restaurants and was therefore "state action" and conduct "under color of" law within the meaning of the Fourteenth Amendment and § 1983. The abstention technique is inapplicable upon that claim because its validity does not hinge on a question of State law and hence no decision of the Virginia courts could moot the Federal question which it presents. Public Utilities Comm. v. United Fuel Gas Co., 1943, 317 U.S. 456, 463, 63 S.Ct. 369, 87 L.Ed. 396.[2]

corporation doing business here. See 28 U.S.C. §§ 1391, 1406.) Nor do the possible consequences appear to be limited to the District of Columbia. Apparently the theory of the dissent would permit suit challenging private action on the theory of official compulsion to be brought in any jurisdiction in the country where the private defendant is found, no matter how distant that jurisdiction is from the state whose officials are being attacked. The operation of our Federal system of government might be gravely affected by any such result. The spirit of the transfer statute, 28 U.S.C. § 1404 (a), if not its letter, would appear to call for the avoidance of consequences of this sort wherever possible. Any court which is asked to accept the position stated by the dissent will no doubt find it necessary to give careful consideration to the practical and governmental consequences just outlined.

1. I also concur in the result reached by the majority with respect to appellant's

claim under §§ 1 and 2 of the Civil Rights Act of 1875. I do this on the authority of Butts v. Merchants & Miners Transportation Co., 1913, 230 U.S. 126, 33 S. Ct. 964, 57 L.Ed. 1422. Although subsequent decisions have cast considerable doubt on the reasoning of that case, see Wormuth, The Present Status of the Civil Rights Act of 1875, 6 Utah L.Rev. 153 (1958), I think that the latest expression of the Supreme Court in United States v. Raines, 1960, 362 U.S. 17, 80 S.Ct. 519, 4 L.Ed.2d 524, points to a reaffirmation of Butts as an exception to the general rule announced in Raines that a statute will be held unconstitutional only as applied to the particular facts presented in an actual case or controversy.

2. It may be argued that the existence of the remaining claim renders abstention inappropriate as to the entire case. Cf. Louisiana Power & Light Co. v. City of Thibodaux, 1959, 360 U.S. 25, 27, 79 S.Ct. 1070, 3 L.Ed.2d 1058.

In my view this additional claim is sufficiently stated in the following allegations of the complaint: that appellee would not have denied appellant service "except for the understanding [of appellee] that Virginia law * * * compelled the exclusion of colored persons from the restaurant," and that appellant has been "systematically excluding Negroes from [its] * * * facilities under color of § 18–327, Code of Virginia," this exclusion having been "produced by the interplay of governmental and private action over a long period of time."

My brethren of the majority find these allegations insufficient. As I read their opinion, they reach this determination by attributing to appellant a specific intent to rely solely on the applicability of § 18–327, Code of Virginia, in order to meet the statement of the United States Court of Appeals for the Fourth Circuit[3] that reliance upon a "positive provision of state law" was essential to a valid claim in these cases. There is serious question whether the meaning of appellant's present allegations may be derived from inferences drawn from such extraneous matter. But even if it may, the allowable inference would be only that appellant sought to rely on a "positive provision of state law," not that he relied on nothing else to establish that the State or its officers maintained and enforced segregation in restaurants.

I read the above described allegations as charging that appellee excluded the appellant because of appellee's "understanding" that it was required by law to do so, and that this understanding was "produced by the interplay of governmental and private action over a long period of time." To restrict proof of the basis of appellee's "understanding" to a State statute ignores settled principles of modern pleading. Rule 8(f) of the Federal Rules of Civil Procedure, 28 U.S.C.A. states, "all pleadings shall be so construed as to do substantial justice." This "excludes requiring technical exactness, or the making of refined inferences against the pleader, and requires an effort fairly to understand what he attempts to set forth." DeLoach v. Crowley's, Inc., 5 Cir., 1942, 128 F.2d 378, 380. In light of these principles, the allegations of the complaint are sufficient to admit evidence that appellee's "understanding" was compelled by governmental officials acting under their apparent authority.[4] It is "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears *beyond doubt* that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 1957, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, emphasis supplied. To require, as I think the majority does, that the complaint further particularize the officer's conduct and appellee's awareness of such conduct is to require appellant to plead his evidence. The Federal Rules do not require a statement of "facts sufficient to constitute a cause of action." See Dioguardi v. Durning, 2 Cir., 1944, 139 F.2d 774, 775.

I turn now to the legal sufficiency of the claim that appellee's refusal to serve appellant is attributable to the State because it was compelled by conduct of State officials. Since the Supreme Court's decision in Brown v. Board of Education, 1954, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873, and subsequent cases,[5]

---

3. Williams v. Howard Johnson's Restaurant, 1959, 268 F.2d 845.

4. Because of the importance of the interests involved in a case of this nature, we should exercise a broad degree of discretion in reading the allegations of the complaint so as to do substantial justice. Cf. Baldwin v. Morgan, 5 Cir., 1958, 251 F.2d 780, where, in reversing the dismissal of a complaint for relief under § 1983, the court found that the allegations stated a valid claim under § 1985(3) as well, although no violation of that section was alleged. The court stated that its duty was to apply the appropriate civil rights statute irrespective of whether it had been correctly described in the complaint or not.

5. E. g., New Orleans City Park Improvement Ass'n v. Detiege, 1958, 358 U.S. 54, 79 S.Ct. 99, 3 L.Ed.2d 46, affirming 1 Cir., 1958, 252 F.2d 122 (park and

there can no longer be any serious doubt that freedom from state imposed racial segregation is a right "secured by the Constitution and laws" of the United States.[6] The difficult question is whether the alleged State-compelled refusal of appellee may be deemed conduct "under color of" law for the purposes of § 1983. I think an affirmative answer is required by recognized principles which have evolved in Fourteenth Amendment adjudication.

In determining the scope of the Fourteenth Amendment, and consequently § 1983, the bare rubric that it applies only to "state action" as opposed to "private conduct" is, without more, of little aid. A state can act only through human representatives,[7] and unless the prohibitions of the Amendment, and the legislation designed to enforce them, apply to these representatives, they are without meaning. Ex Parte Virginia, 1879, 100 U.S. 339, 347, 25 L.Ed. 676.

If a state statute affirmatively required restaurant owners to segregate their facilities or exclude Negro patrons, conduct of the restaurant owners caused solely by the compulsion of such a statute would be state action and would give rise to a claim for relief under § 1983. The decisions of the Supreme Court in the "white primary" cases clearly indicate that, at the very least, a state cannot avoid the prohibitions of the Fourteenth and Fifteenth Amendments by delegating to private groups or institutions the enforcement of a policy which, if enforced by the state would be contrary to the Constitution. See Smith v. Allwright, 1944, 321 U.S. 649, 64 S.Ct. 757, 88 L.Ed. 987; Nixon v. Condon, 1932, 286 U.S. 73, 52 S.Ct. 484, 76 L.Ed. 984. Cf. Terry v. Adams, 1953, 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152; Rice v. Elmore, 4 Cir., 1947, 165 F.2d 387, certiorari denied, 1948, 333 U.S. 875, 68 S.Ct. 905, 92 L.Ed. 1151. And where the policy is one of racial segregation constituting an unreasonable classification under the Equal Protection Clause of the Fourteenth Amendment,[8] the initiation and enforcement of that policy by "instrumentalities" of the State gives rise to a claim for relief under the Civil Rights Act. See Smith v. Allwright, supra; Kerr v. Enoch Pratt Free Library of Baltimore City, 4 Cir., 1945, 149 F.2d 212, certiorari denied, 1945, 326 U.S. 721, 66 S.Ct. 26, 90 L.Ed. 427. If the policy of segregation is initiated by the state legislature rather than by a private organization acting as a state "instrumentality" or exercising a "state function," whose action can therefore be imputed to the state, then, a fortiori, enforcement of that policy is prohibited by the Amendment and the implemental civil

recreational facilities); Gayle v. Browder, 1956, 352 U.S. 903, 77 S.Ct. 145, 1 L.Ed.2d 114, affirming D.C.M.D.Ala.1956, 142 F.Supp. 707 (intrastate bus transportation); Holmes v. City of Atlanta, 1955, 350 U.S. 879, 76 S.Ct. 141, 100 L.Ed. 776, reversing 5 Cir., 1955, 223 F.2d 93 (golf courses); Mayor and City Council of Baltimore City v. Dawson, 1955, 350 U.S. 877, 76 S.Ct. 133, 100 L.Ed. 774, affirming 4 Cir., 1955, 220 F.2d 386 (public beach and bathhouse). Cf. Burton v. Wilmington Parking Authority, 81 S.Ct. 856 (restaurants).

6. In the following cases, claims under § 1983 against State imposed racial segregation have been sustained: Baldwin v. Morgan, 5 Cir., 1958, 251 F.2d 780; Flemming v. South Carolina Electric & Gas Co., 4 Cir., 1955, 224 F.2d 752, appeal dismissed, 1956, 351 U.S. 901, 76 S.Ct. 692, 100 L.Ed. 1439; Kerr v. Enoch Pratt Free Library of Baltimore City, 4 Cir., 1945, 149 F.2d 212, certiorari denied, 1945, 326 U.S. 721, 66 S.Ct. 26, 90 L.Ed. 427.

7. "The test is not whether [they] * * * are the representatives of the state in the strict sense in which an agent is the representative of his principal. The test is whether they are to be classified as representatives of the state to such an extent and in such a sense that the great restraints of the Constitution set limits to their action." Nixon v. Condon, 1932, 286 U.S. 73, 89, 52 S.Ct. 484, 487, 76 L.Ed. 984.

8. Gayle v. Browder, 1956, 352 U.S. 903, 77 S.Ct. 145, 1 L.Ed.2d 114, affirming D.C. M.D.Ala.1956, 142 F.Supp. 707; Brown v. Board of Education, 1954, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873.

rights legislation. When otherwise private persons or institutions are required by law to enforce the declared policy of the state against others, their enforcement of that policy is state action no less than would be enforcement of that policy by a uniformed officer. Baldwin v. Morgan, 5 Cir., 1958, 251 F.2d 780; Flemming v. South Carolina Electric & Gas Co., 4 Cir., 1955, 224 F.2d 752, appeal dismissed, 1956, 351 U.S. 901, 76 S.Ct. 692, 100 L.Ed. 1439. "The pith of the matter is simply this, that when [private groups] * * * are invested with an authority independent of the will of the association in whose name they undertake to speak, they become to that extent the organs of the state itself, the repositories of official power." Nixon v. Condon, supra, at page 88, of 286 U.S., at page 487 of 52 S.Ct. Since a uniformed officer's enforcement of a statute requiring segregated facilities would give rise to a claim for redress under § 1983, similar enforcement by a delegated representative of the State, although ostensibly a private individual, likewise would be actionable. "Only by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance." Burton v. Wilmington Parking Authority, 81 S.Ct. 856, 860.

In asserting the claim here discussed, appellant does not contend that appellee's refusal to serve him was authorized or required by a positive provision of Virginia law; but rather that its refusal was caused *solely* by the understanding generated by the conduct of State law enforcement officials that such conduct was required by law. If appellant can prove this, he is entitled to relief. For if appellee was required by State officials acting "under color of law" to segregate its facilities or to exclude Negroes,

its conduct was likewise State action and "under color of law" no less than if it had been required by an unambiguous mandate of the Virginia legislature. If the State clothed its officials with the apparent authority to enforce segregation or exclusion of Negroes in public places,[9] and if these officials, acting by virtue of their office and purportedly pursuant to State law, by their conduct led appellee to understand and believe in good faith that it was required by law to exclude Negroes, then the appellee's action in excluding the appellant is attributable to the State.[10] For Fourteenth Amendment purposes it matters not that the policy of racial segregation originated in the executive rather than the legislative or judicial branch of the State government. "Whether the statute-book of the state actually laid down any such rule * * *, or not the state, through its officer, enforced such a rule: and it is against such state action, through its officers and agents, that the last clause" of the Fourteenth Amendment and the Civil Rights Acts are "directed." Civil Rights Cases, 1883, 109 U.S. 3, 15, 3 S.Ct. 18, 24, 27 L.Ed. 835 (referring to the Court's decision in Ex Parte Virginia, supra). It is well established that conduct of State officials may constitute State action even though it is contrary to State law and subject to correction by higher State authority. United States v. Raines, supra.

Appellee contends that it could have segregated its facilities or excluded Negroes free from Federal restraint, and that the additional presence of State compulsion does not change its conduct into State action. Admittedly, appellee, had it so desired as a matter of corporate policy, could have chosen to engage in such conduct without offending the Federal Statute. Civil Rights Cases, supra. But, by its motion to dismiss appellee

9. Cf. Valle v. Stengel, 3 Cir., 1949, 176 F.2d 697.

10. In determining whether the State officials did in fact conduct themselves as appellant contends, it matters not whether they were motivated by the mistaken belief that § 18.1–356 applied to restaurants or by a community custom. However, evidence upon these matters would, if available, be relevant upon the issue of whether appellee actually did understand that it was required by the State officials to exclude Negroes.

admits, for the purposes of testing the sufficiency of the complaint,[11] that its exclusion of appellant was caused solely by the mandate of Virginia expressed through its apparently authorized officials and not by any exercise of private volition. Whether appellee, apart from this alleged compulsion, would have excluded appellant because of his color is a question of fact which is properly to be determined at trial.

Although the alleged official conduct required *segregation,* appellee *excluded* appellant. No significance, however, can be attached to this distinction. Appellee was left only the option of either segregating or excluding Negroes. That it was "free to choose" between segregation and exclusion does not make its election of either a matter of "choice" in the sense of response to private volition rather than public command. Appellee was compelled to choose. Whichever alternative it chose, its action would have been undertaken, according to the complaint's allegations, only because of the compulsion of the State.

The nature of the relief available under § 1983 is worthy of comment. That section speaks of granting relief in "an action at law, suit in equity, *or other proper proceeding for redress."* (Emphasis supplied.) Whatever may be said about the initial congressional purpose in enacting this legislation, in the last twenty years the expansion of the state action concept [12] and of the area of rights protected by the Federal Government [13] have made this section an increasingly flexible vehicle for enforcing the Constitution's guarantees of individual liberties against encroachment by the states and their representatives. The relief provisions of the statute are strikingly adaptable for that purpose. The present case demonstrates this. If, in fact, appellee's refusal to serve appellant was compelled against its will, principles of equity combine with the purpose of the Act to dictate relief which would also shield appellee against such compulsion, rather than penalize appellee by imposing damages for surrendering to it. This is available under the flexible relief provisions of the statute by a declaratory judgment vindicating appellant's right to be free from state-imposed racial discrimination. For such relief, an actual controversy is required. Evers v. Dwyer, 1958, 358 U.S. 202, 79 S.Ct. 178, 3 L.Ed. 2d 222. A declaratory judgment would have real meaning and purpose.[14] It would vindicate a civil right basic to human dignity, equality before the law. As the Fifth Circuit has said in recent suits to declare State imposed segregation invalid, "many, if not most, civil rights actions and those to redress denial of equal privileges and immunities are to obtain a declaration * * * of a constitutional prerogative * * * which is being ignored or denied by the defendant." Baldwin v. Morgan, supra, at page 787, of 251 F.2d. And "in a suit of this kind plaintiffs have an absolute right to have their constitutional right declared * * *." Jackson v. Rawdon, 5 Cir., 1956, 235 F.2d 93, 96.

11. Callaway v. Hamilton Nat. Bank of Washington, 1952, 90 U.S.App.D.C. 228, 195 F.2d 556; Bolger v. Marshall, 1951, 90 U.S.App.D.C. 30, 193 F.2d 37.

12. E. g., Terry v. Adams, 1953, 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152; Shelley v. Kraemer, 1948, 334 U.S. 1, 68 S. Ct. 836, 92 L.Ed. 1161; Marsh v. State of Alabama, 1946, 326 U.S. 501, 66 S. Ct. 276, 90 L.Ed. 265; Smith v. Allwright, 1944, 321 U.S. 649, 64 S.Ct. 757, 88 L.Ed. 987.

13. E. g., Screws v. United States, 1945, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495; Hague v. Committee for Industrial Organization, 1939, 307 U.S. 496, 59 S. Ct. 954, 83 L.Ed. 1423.

14. Speaking to the question of the requirement of a jurisdictional amount in civil liberties cases, Mr. Justice Stone stated, "[U]nconstitutional infringement of a right of personal liberty [is] not susceptible of valuation in money." Hague v. Committee of Industrial Organization, 1939, 307 U.S. 496, 531, 59 S.Ct. 954, 971, 83 L.Ed. 1423 (concurring opinion). Clearly, judicial vindication of appellant's rights is the paramount element of redress.

848

The complaint seeks not only damages but also "such other and further relief as to the Court may seem just and proper." Even if no relief other than damages were requested, the District Court is empowered to grant the relief to which appellant proves that he is entitled at trial. Rule 54(c), Fed.R.Civ.P.; Blazer v. Black, 10 Cir., 1952, 196 F.2d 139; Keiser v. Walsh, 1941, 73 App.D.C. 167, 118 F.2d 13.

Finally the majority opinion asserts that to recognize appellant's claim under § 1983 would make the courts of the District of Columbia a possible forum for similar claims arising in any State. This is hardly a valid reason for denying relief. In any event, it overlooks the requirements of personal jurisdiction and venue and our power under 28 U.S.C. § 1404(a) to transfer a case to a more convenient forum.

Appendix

Commonwealth of Virginia

Office of
The Attorney General

Richmond

August 24, 1960

Honorable C. E. Cuddy
Commonwealth's Attorney for
  the City of Roanoke
Roanoke, Virginia

Dear Mr. Cuddy:

I am in receipt of your letter of August 23, 1960, which reads, in part, as follows:

"I would appreciate it if you would advise me whether or not in your opinion Section 18.1–356 of the Code of Virginia is applicable to restaurants, hotel dining rooms or lunch counters that are operated by merchants in their stores or places of business.

"If this section is not applicable, is there any statute in your opinion which requires separation of the races in eating establishments?"

Sections 18.1–356 and 18.1–357 of the Virginia Code comprise Article 6, Chapter 7, Title 18.1 of the Code of Virginia (1960), and respectively provide:

"§ 18.1–356. Duty to separate races at public assemblages.—Every person, firm, institution or corporation operating, maintaining, keeping, conducting, sponsoring or permitting any *public hall, theatre, opera house, motion picture show or any place of public entertainment or public assemblage* which is attended by both white and colored persons shall separate the white race and the colored race and shall set apart and designate in each such *public hall, theatre, opera house, motion picture show or place of public entertainment or public assemblage,* certain seats therein to be occupied by white persons and a portion thereof, or certain seats therein, to be occupied by colored persons and any such person, firm, institution or corporation that shall fail, refuse or neglect to comply with the provisions of this section shall be guilty of a misdemeanor and upon conviction thereof *shall be fined not less than one hundred dollars nor more than five hundred dollars for each offense."* (Italics supplied.)

"§ 18.1–357. Failure to take space assigned in pursuance of preceding section.—Any person who fails, while in any *public hall, theatre, opera house, motion picture show or place of public entertainment or public assemblage,* to take and occupy the seat or other space assigned to them in pursuance of the provisions of the preceding section by the manager, usher or other person in charge of such *public hall, theatre, opera house, motion picture show or place of public entertainment or public assemblage,* or whose duty is to take up tickets or collect the admission from the guests therein, or who shall fail to obey the request of such manager, usher or other person, as aforesaid, to change his seat from time to time as occasion requires, in order that the preceding section may be

complied with, shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined not less than ten dollars nor more than twenty-five dollars for each offense. Furthermore, such person may be ejected from such *public hall, theatre, opera house, motion picture show or other place of public entertainment or public assemblage* by any manager, usher or ticket taker, or other person in charge of such *public hall, theatre, opera house, motion picture show or place of public entertainment or public assemblage,* or by a police officer or any other conservator of the peace, and if such person ejected shall have paid admission into such *public hall, theatre, opera house, motion picture show or other place of public entertainment or public assemblage,* he shall not be entitled to a return of any part of the same." (Italics supplied.)

Initially, it should be noted that the above-quoted statutes are penal in character and must be strictly construed. Moreover, the rules of *ejusdem generis* and *noscitur a sociis* are clearly applicable in construing the general phrase "place of public entertainment or public assemblage" appearing therein. When the statutes under consideration are interpreted in light of these principles, I am constrained to believe that your initial inquiry should be answered in the negative.

So far as I have been able to ascertain, the leading case in Virginia involving the application of the above-stated rules of construction to a penal statute is Gates and Son Co. v. City of Richmond, 103 Va. 702, 49 S.E. 965. In that case, the defendant, a corporation whose principal place of business was located on Fourteenth Street in the City of Richmond, was convicted in the trial court for an alleged violation of a penal ordinance of the city prohibiting any person from constructing or placing "any portico, porch, door, window, step, fence, or other projection" which extended into any street. The specific obstruction there under consideration was a movable "gangplank" or "skid" some twelve feet in length, which extended from the front door of defendant's place of business across the sidewalk to delivery wagons in the street.

Utilizing the same rules of construction which I believe are indispensable to the proper resolution of the questions you present, the Supreme Court of Appeals of Virginia reversed the judgment of conviction entered by the trial court. With respect to the character of the ordinance under consideration and its proper construction, the Court pointed out (103 Va. at 704 [49 S.E. at 965]):

"This is a penal ordinance, and is, therefore, to be construed strictly. It is not to be extended by implication, and must be limited in its application to cases clearly described by the language employed. The books abound with cases illustrating this principle, which is of universal application, except in particular instances in which the doctrine has been modified by statute * * *.

* * * * * *

"These and many other cases which could be cited to the same effect, tend to illustrate the jealousy with which courts regard any substantial departure from this time-tested canon of construction. Its violation involves a most dangerous innovation, and places persons accused of crime at the mercy and arbitrary discretion of the judge who may chance to preside in the particular case."

In support of this view, the Court quoted the following language of Marshall, C. J., in United States v. Wiltberger, 5 Wheat. 76, 5 L.Ed. 37:

"The rule that penal laws are to be construed strictly is, perhaps not much less old than construction itself. It is founded in the tenderness of the law for the rights of individuals, and on the plain principle that the power of punishment is vested in

the legislative, not the judicial, department * * *. The case must be a strong one, indeed, which would justify a court in departing from the plain meaning of words, especially in a penal act, in search of an intention which the words themselves do not suggest. To determine that a case is within the intention of a statute its language must authorize us to say so.

"It would be dangerous, indeed, to carry the principle, that a case which is within the reason or mischief of a statute, is within its provisions, so far as to punish a crime not enumerated in the statute, because it is of kindred character with those which are enumerated."

See, Jennings v. Commonwealth, 109 Va. 821, 63 S.E. 1080 [21 L.R.A.,N.S., 265]; Withers v. Commonwealth, 109 Va. 837, 65 S.E. 16; Sellers v. Bles, 198 Va. 49, 92 S.E.2d 486.

The Court also pointed out that the "kindred principles" of *ejusdem generis* and *noscitur a sociis* must also be considered in ascertaining the correct interpretation of the ordinance there under consideration. These two rules of construction are well stated in 17 M.J. 325, Statutes: Section 62, and 17 M.J. 327, Statutes: Section 63, respectively, in the following language:

"When a particular class of persons or things is spoken of in a statute and general words follow, the class first mentioned must be taken as the most comprehensive, and the general words treated as referring to matters ejusdem generis with such class, the effect of general words when they follow particular words being thus restricted. Things exceptional in character are never legally deemed to be included or embraced in general terms of disposition, prohibition or regulation of a class or classes of normal or ordinary subjects mentioned. This principle is the basis or meaning of the rule ejusdem generis.

\* \* \* \* \* \* ¶

"It is a fundamental rule of construction that in accordance with the maxim 'noscitur a sociis' the meaning of a word or phrase may be ascertained by reference to the meaning of other words or phrases with which it is associated. Language, though apparently general, may be limited in its operation or effect where it may be gathered from the intent and purpose of the statute that it was designed to apply only to certain persons or things, or was to operate only under certain conditions.

"In the interpretation of statutes, words and phrases therein are often limited in meaning and effect by necessary implications arising from other words or clauses thereof * * Also, a specific enumeration of words or objects, as a rule, controls general words which follow, and limits them in their operation to others of like kind."

Supportive of the foregoing statements are numerous decisions of the Supreme Court of Appeals of Virginia: Gates and Son Co. v. City of Richmond, supra; Standard Ice Co. v. Lynchburg Diamond Ice Factory, 129 Va. 521, 106 S.E. 390; Rockingham Cooperative Farm Bureau v. [City of] Harrisonburg, 171 Va. 339, 198 S.E. 908; East Coast Freight Lines v. City of Richmond, 194 Va. 517, 74 S.E.2d 283; Sellers v. Bles, supra.

Having indicated the various rules of construction requisite to the proper resolution of the question presented in the Gates case, supra, the Court concluded (103 Va. at 707 [49 S.E. at 966]):

"Applying the foregoing well-settled principles to the case in judgment, it is quite apparent that the offense charged is not embraced by the provisions of the ordinance under consideration. The ordinance is plainly intended to apply to obstructions and encroachments on the streets of a permanent character, and cannot without unwarranted enlargement of the ordinary scope and

meaning of the language used, be made to embrace temporary obstructions such as are caused by the use of skids and similar appliances employed in loading and unloading wagons.

"If in the judgment of the city council the use made of the streets in this instance amounts to an undue interference with the rights of the public, the evil can be remedied by appropriate legislation. But the courts must construe the ordinance as they find it, and cannot enlarge its operation to meet the exigencies of particular cases."

Analysis of the language of Sections 18.1–356 and 18.1–357 of the Code of Virginia furnishes significant internal support for the view that the rules of *ejusdem generis* and *noscitur a sociis* apply with special emphasis in delineating the proper scope of these statutes and that the general phrase, "any place of public entertainment or public assemblage" must be interpreted as restricted to places of the same class as those denominated by the immediately preceding specific terms. Although the general phrase in question is repeated seven times in the two enactments, it is never isolated from—but in each instance appears in conjunction with—the antecedent specific terms, "public hall, theatre, opera house" and "motion picture show." It is manifest that these specific terms embrace places of public entertainment customarily attended by large groups of people who are usually present collectively for protracted periods of time. By contrast, drugstores, variety stores, lunch counters, restaurants and cafeterias are not places of public entertainment and are usually attended by groups of people who are present only temporarily for the purpose of inspecting or purchasing merchandise or meals. Certainly, the particular establishments concerning which you inquire are not expressly embraced in the statute, and I am constrained to believe that such establishments are not of the same class as those which are specifically mentioned. Moreover, as previously indicated, the statutes under consideration must be limited in their application to cases clearly described by the language employed, and the scope of the enactments may not be extended by implication.

In light of the principles heretofore discussed, and the decision of the Supreme Court of Appeals of Virginia in Gates and Son Co. v. City of Richmond, supra, I am of the opinion that drugstores, variety stores, restaurants, lunch counters and cafeterias should not be deemed to be included within the ambit of Sections 18.1–356 and 18.1–357 of the Code of Virginia.

I am not advised of any statute in Virginia which requires separation of the races in eating establishments. Such separation is, in the discretion of the owner of such an establishment, permissible.

Section 18.1–173 of the Code deals with the offense of trespass and it is designed to protect the rights of the owner or those in lawful control of private property. Under this statute, any person who shall, without authority of law, go upon the premises of another, after having been forbidden to do so, either orally or in writing, is guilty of a misdemeanor. Therefore, while there is no statute which requires separation of the races in eating establishments, there is a statute which protects the owner whose policy is to separate the races and who does, in fact, operate a segregated restaurant or other eating establishment.

Very truly yours,
[Albertis S. Harrison, Jr.]
Attorney General.

ASHjr/w